## ED. BERG, et al., v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

COMMON CARRIER; *Unambiguous Contract; Subsequent Loss.* Where a railroad company receives goods for transportation to a point beyond its line, upon a special contract in which is no express agreement to transport to such point, but the place is only named as the point of destination, and in which it is expressly agreed that the goods are to be transported over the company's road and delivered in good order to the connecting carrier, and that the company is not to be responsible as carrier beyond its line and its liability as such is to terminate upon delivery of the goods to the connecting carrier, *held*, (1) that there is no uncertainty or ambiguity in the contract, and that it is clearly only a contract for transportation over its own line and delivery to a connecting carrier; (2) that such contract, being no contract for through transportation to the point of destination, presents no question of an attempt to limit the common-law liability of the carrier as to anything happening beyond its own line; and (3) that the company transporting over its own line and delivering the goods in safety to the connecting carrier performs its contract and is not liable for any subsequent loss or damage.

36 — 30 KAS.

*Error from McPherson District Court.*

ACTION brought by *Berg* and another, as partners, against *The Railroad Company*, to recover $179.50, damages for alleged shortages and loss of wheat. At the April Term, 1883, the court overruled plaintiffs' demurrer to defendant's answer, which ruling they bring here. The opinion states the case.

*Frank G. White*, for plaintiffs in error.

*Geo. R. Peck*, and *A. A. Hurd*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Plaintiffs in error, plaintiffs below, were grain merchants at McPherson, Kansas, and shipped over the road of defendant several car-loads of wheat to parties at Chicago, Illinois. Claiming that when the wheat reached Chicago there were certain shortages and loss of wheat, they brought their action against the defendant to recover damages therefor. The defendant answered, setting up certain written contracts, alleging that the wheat was shipped under those contracts, and claiming that under them it contracted simply to transport the wheat safely over its own road, and deliver it in good order to connecting lines, and that it did so transport and deliver the wheat. To this answer the plaintiffs demurred. The demurrer was overruled, and plaintiffs allege error.

It will be perceived that the case comes before us upon a question of pleading, and not upon any question of evidence. We are not to inquire whether, in fact, the shipments were made under these contracts, or whether the defendant safely transported the wheat over its own road, and delivered the full amount in good order to the connecting road. Neither do we need to inquire what evidence is necessary to prove a shipment under the contracts, or a safe transportation and delivery by the defendant. It may also be conceded that a common carrier may contract for the transportation of freight

beyond the line of its own road, and that upon such a contract it assumes all the obligations of a carrier for the entire distance. ·And further, it may be conceded that when the contract of shipment is prepared by the carrier and is doubtful or ambiguous in its terms, the doubt or ambiguity is to be resolved in favor of the shipper and against the carrier. This is upon the general rules respecting the interpretation of contracts. Whether the rule of the English courts that carriers who receive goods and book them for a certain. destination are without any further or special contract responsible throughout the entire route, is a question which, while for the purposes of this case may be answered in the affirmative, we do not now attempt definitely to decide. It is a question upon which the courts of this country are divided. (2 Redfield on Law of Railways, § 14, and cases cited; *Skinner v. Hall,* 60 Me. 477; *Babcock v. Rld. Co.,* 49 N. Y. 491; *Rld. Co. v. Campbell,* 7 Heisk. [Tenn.] 253; *Bryon v. Rld. Co.,* 11 Bush, 597; *Berg v. Steamship Co.,* 5 Daly, 394; *Crawford v. Rld. Assoc.,* 51 Miss. 222; *Lock Co. v. Rld.,* 48 N. H. 339; *Rld. Co. v. McKenzie,* 43 Mich. 609; *Hadd v. Express Co.,* 52 Vt. 335.)

Passing by these matters, we remark that the bill of lading is neither ambiguous nor uncertain. It is clear and definite, and not fairly open to two constructions. Near the head of the bill of lading in large letters, and so as to call the attention of the shipper to the scope of the contract, are these words: "For freight going beyond this line of road only." Then on the left-hand column, under the title "Consignee and destination," are the words: "Notify R. & B., Chicago, Ill. Via H. & St. Jo. R. R." This statement of the consignee and destination is all that by any pretense can be claimed to indicate a contract to transport to Chicago; while parallel with this, and on the right-hand column in ordinary size type, is an acknowledgment of a receipt of the goods, describing them, followed by these words:

"To be transported over the road and delivered in like good order to the next company or carriers, for them to de-

liver to the place of destination of said property; it being distinctly understood that this company shall not be responsible as a common carrier for such property beyond its line of road, or while at any of its stations awaiting delivery to such consignee or carriers — the company being liable as warehousemen only."

And further down, in smaller type, is this stipulation:

"The responsibility of this company as a common carrier to terminate on delivery of the freight as per this bill of lading to the company whose line may be considered a part of the route to the place of destination of said property."

Now nothing could be clearer than that the company stipulated only for safe transportation over its own road, and a delivery in good order to the connecting carrier. It will be borne in mind that there is no express agreement to transport to Chicago. The only thing which connects Chicago with the transportation is where it is named as the point of destination, while the express agreement, and the only agreement expressed, is that the company shall not be responsible as a common carrier beyond its own line, and that it agrees simply to transport the goods over its own line and deliver them to the connecting carrier. It is difficult to see how language could be used to make the contract more express and clear. In the case of *Railroad Co. v. Bank*, 20 Wis. 130, the contract was no more express or clear than in the case at bar, and it was held that the company had expressly restricted the liability as carrier to the line of its road. See also the case of *Rld. Co. v. Pontius*, 19 Ohio St. 221, where the bill of lading was very like that before us, and it was held that the company's liability was restricted to its own line. (See also *Condict v. Rld. Co.*, 54 N. Y. 500.)

We remark again, that this is not a case in which a common carrier is attempting to limit his common-law liability by contract. It is the duty of a common carrier to receive and transport goods over its own line — a duty which it must perform, or respond in damages. But it is not its duty to transport such goods over the line of any other carrier, or to contract for such transportation; and it cannot be compelled

to assume such an obligation. Its entire common-law duty is limited to its own line; its owes nothing to the public beyond that. While it may be bound if it contracts for transportation beyond its line, yet it is not bound, unless by contract, express or implied, it does undertake such transportation. Until it assumes to contract for such transportation, no question can arise as to whether it is attempting to restrict its common-law liability. (See, in addition to authorities heretofore cited, *Rld. Co. v. Mfg. Co.*, 16 Wall. 318.) The argument of counsel, therefore, as to how far a carrier may by contract restrict its common-law liability is not in point. There is nothing else requiring notice. The contract being clear and unambiguous, and only for transportation over defendant's road and safe delivery to the connecting carrier, and that contract having been, as conceded by the pleadings, fully performed, for any subsequent loss the connecting carrier is alone responsible.

The judgment will be affirmed.

All the Justices concurring.