67   110
80   100
67   110
101  266
67   110
108  578
67   110
d149  78

## THE RICKERSON ROLLER MILL COMPANY v. THE GRAND RAPIDS & INDIANA RAILROAD COMPANY.

*Carriers—Duty and liability—Construction of contract.*

1. It is well settled that, in the absence of any *special* agreement or contract as to trains going over connecting lines, it is the duty of the carrier to carry safely to the end of its line, and there deliver to the next carrier in the route beyond, and by so doing the carrier is discharged.

2. " The obligation of the *first* or any *preceding* carrier is discharged when he has safely delivered the goods to the next succeeding carrier to whom such delivery is required in order to complete the transportation, without he is bound to carry it to destination." *Railway Co. v. McKenzie,* 43 Mich. 609.

3. On a review of the facts of this case, the Court held that the contract of the defendant was not for *through* carriage, and was performed on delivery of the goods at La Otto to the Wabash Railway Company, with notice that the same were to be delivered on presentation of the bill of lading by the consignee.

Error to superior court of Grand Rapids.   (Parrish, J.) Argued July 5 and 6, 1887.   Decided October 6, 1887.

Assumpsit.   Plaintiff brings error.  ˙Affirmed.   The facts are stated in the opinion.

*Edwin F. Uhl* and *Edmund D. Barry,* for appellant.

*T. J. O'Brien* and *J. H. Campbell,* for defendant.

SHERWOOD, J.   The plaintiff in this case sues to recover the value of goods shipped over the defendant's road to Joplin, in the state of Missouri.

The plaintiff's right of action is based on the claim that the defendant failed to comply with the contract of shipment, and delivered the goods in question without the production of the bill of lading, whereby the plaintiff was dam-

aged in the sum of $2,099.95.    The trial of the cause was had in the superior court of Grand Rapids before a jury, and a verdict was directed for the defendant.

The essential facts to a correct understanding of the case, not disputed, are as follows:

The defendant's road extends from Grand Rapids to Richmond, in Indiana, and the plaintiff at the time the shipment was made was doing business under the name of O. E. Brown Manufacturing Company, and subsequently its name was duly changed to Rickerson Roller Mill Company, and it does business in the city of Grand Rapids.

The plaintiff sold its mills in various sections of the country.    For two years the plaintiff had sold mills to J. Halteman & Co., of St. Louis, Missouri.    J. B. Seargeant, of Joplin, made a contract with Halteman & Co. for the purchase of a set of the plaintiff's mills, and Halteman & Co. ordered a set from the plaintiff at Grand Rapids, and directed that they should be shipped direct to Seargeant, at Joplin. The plaintiff accepted the order, and delivered the mills to the defendant for shipment, and gave the following order therefor:

"GRAND RAPIDS, MICH., May 30, 1884.
"Delivered to the G. R. & I. Railroad,
     "BY THE O. E. BROWN MANUFACTURING COMP'Y,
"the following property, in apparent good order (except as noted), marked and assigned as in the margin, which they agree to deliver with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order (the dangers incident to railroad transportation, loss or damage by fire while at depots or stations, loss or damage of combustible articles by fire while in transit, and unavoidable accidents excepted), at————station, upon the payment of charges.

"The company further agree to forward the property to the place of destination as per margin, but are not to be held liable on account thereof, after the same shall be delivered as above.    The company, however, guarantee the through rate of freight as designated below.

## " CONDITIONS.

"☞ The company do not agree to carry the property by any par-ticular train, nor in time for any particular market.

" Oils, and all other liquids, whether carried in packages or tanks furnished by shippers, or by the company, to be at owner's risk of leakage.

" Liquids in glass or earthen, drugs and medicines in boxes, glass and glassware in boxes, looking-glasses, marble, stoves, stove-plates, and light castings, earthen or queensware, at owner's risk of break-age.

" Agricultural implements, cabinet-ware, and furniture not boxed, carriages, at owner's risk of breakage or damage by chafing.

" Oysters, poultry, dressed hogs, fresh meats, and provisions of all kinds, trees, shrubbery, fruit, and all perishable property, at owner's risk of frost or decay.

"☞ It is a part of this agreement that all other carriers trans-porting the property herein receipted for as a part of the through line shall be entitled to the benefit of all the exceptions and condi-tions above mentioned, and, if a carrier by water, he is to be entitled to the further benefit of exception from loss or damage arising from collision, and all other dangers incident to lake and river navigation.

"☞ Grindstones and wooden bowls entirely at owner's risk of breakage or chipping.

"☞ And all other conditions of the said railroad company.

| MARKED : | VIA : |
|---|---|
| _____Order of . B. Seargeant,_____ | _____ |
| _____Joplin, Mo._____ | _____ |
| Deliver on Bill of Lading _____ | R. R. |

| | | WEIGHT. |
|---|---|---|
| _____5 | Roller mills,_____ | |
| _____3 | Crates of tighteners,_____ | |
| _____ | Loose tighteners,_____ | |
| _____4 | Crates of pulleys,_____ | O. Risk. |
| _____ | Loose pulleys,_____ | |
| _____ | Boxes castings,_____ | L. 9,700 lbs. |
| _____ | Boxes sundries,_____ | |
| _____1 | Tram,_____ | |

| _____Car No._____ | Rate_____ |
|---|---|

Size, 6x20._____ _____
Shop No. 65–87–71–82–72. _____

O. E. BROWN MANUFACTURING COMP'Y, Consignors.
Per SCHRODER."

In accordance with this order the defendants shipped the goods, and on the delivery of the same to the company for that purpose the plaintiff was given the following receipt:

"GRAND RAPIDS, MICH., May 30, 1884.

"Received of the O. E. BROWN MANUFACTURING COMP'Y, by the G. R. &. I. Railroad, the following property, in apparent good order (except as noted), marked and consigned as in the margin, which they agree to deliver with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order (the dangers incident to railroad transportation, loss or damage by fire while at depots or stations, loss or damage of combustible articles by fire while in transit, and unavoidable accidents excepted), at———station, upon the payment of charges.

"The company further agree to forward the property to the place of destination as per margin, but are not to be held liable on account thereof, after the same shall be delivered as above.    The company, however, guarantee the through rate of freight as designated below.

" CONDITIONS.

"☞The company do not agree to carry the property by any particular train, nor in time for any particular market.

" Oils and all other liquids, whether carried in packages or tanks furnished by shippers, or by the company, to be at owner's risk of leakage.

"Liquids in glass or earthen, drugs and medicines in boxes, glass and glassware in boxes, looking-glasses, marble, stoves, stove-plates, and light castings, earthen or queensware, at owner's risk of breakage.

" Agricultural implements, cabinet-ware, and furniture not boxed, carriages, at owner's risk of breakage or damage by chafing.

" Oysters, poultry, dressed hogs, fresh meats, and provisions of all kinds, trees, shrubbery, fruit, and all perishable property, at owner's risk of frost or decay.

" ☞It is part of this agreement that all other carriers transporting the property herein receipted for as part of the through line shall be entitled to the benefit of all the exceptions and conditions above mentioned, and, if a carrier by water, he is to be entitled to the further benefit of exception from loss or damage arising from collision, and all other dangers incident to lake and river navigation.

" ☞Grindstones and wooden bowls entirely at owner's risk of breakage or chipping.

" ☞And all other conditions of the said railroad company.

67 MICH.—8.

| MARKED :                                | VIA :              |
|-----------------------------------------|--------------------|
| _____Order of J. B. Seargeant,_____ | _____ |
| _____Joplin, Mo._____   | _____ |
| Deliver on Bill of Lading._____ |                R. R. |

| | | WEIGHT. |
|---|---|---|
| _____5 | Roller mills,_____ | |
| _____3 | Crates of tighteners,_____ | |
| _____ | Loose tighteners,____ ,_____ | |
| _____4 | Crates of pulleys,_____ | O. Risk. |
| _____ | Loose pulleys,_____ | |
| _____ | Boxes castings,_____ | L. 9,700 lbs. |
| _____ | Boxes sundries,_____ | |
| _____1 | Tram,___ _____ | |

| _____Car No._____ | Rate._____ |
|---|---|

Size, 6x20._____
Shop No. 65–87–71–82–72._____

H. P. BURGWIN, Agent."

This order and this receipt, commonly called a bill of lading, contain the contract between the parties for the shipment of the goods in question; and the plaintiff claims that it is a contract on the part of the defendant to carry and deliver the same at Joplin to J. B. Seargeant, on production of the bill of lading, or to his order, and that the production of the bill of lading was one of the conditions upon which the property was to be delivered to the consignee or to his order.

This bill of lading was as follows:

"Manifest No. 3,590...............

" Car { Initials................ No......... Capacity, 10,738 lbs.

"GRAND RAPIDS & INDIANA RAILROAD COMPANY.

"Manifest of Merchandise forwarded from Grand Rapids to La Otto, Ind.................

"In all cases where the prices charged for transportation are less than tariff rates, the date of the authority for so doing must be stated on the way-bill, and also entered on the freight forwarded book.    MAY 31.    1884.

"Original point of shipment................No.......Transferred into car.....Original car...............No.......at..............

| Date of Bill Lading. | Name of Shipper. | Marks, Consignees, and Destination. | Description of Articles. | Weight. | Rate. | Freight. | | Chages. | Prepaid. | Unpaid. | | Through Rate. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | O. E. B. 9,245 | Order Clark Decker, Greeley, Kans. 'Deliver on B-L.' | 1 roller mill. 1 crt. tighteners. 2 " pulleys. 6 bx. castings. 1 tram. O. K. | 3,000 Wab. | 15 108 | 4 | 50 | | | 4 | 50 | |
| | Do. 46 | Order J. B. Seargeant, Joplin, Mo. 'Deliver on B-L.' | 5 roller mills. 3 crts. tighteners. 4 " pulleys. 1 tram. O. K. | 9,700 Wab. Beyond. | 17-3 22-7 70 | 16 E. St. L. | 78 | | | 16 | 78 | |
| | | | | 12,700 | | 21 | 28 | | | 21 | 28" | |

The plaintiff understood at the time this bill of lading was given that the railroad operated by the defendant did not run to Joplin, but that it ran from Petoskey, Michigan, to Richmond, Indiana.

There were a large number of railroads south of Grand Rapids crossing the defendant's road going west, and among them was the Wabash, St. Louis & Pacific Railway. It has two branches crossing the defendant's road going west,—one at La Otto and one at Fort Wayne. The defendant had an arrangement with the company to carry west-bound freight by way of La Otto.

On the thirty-first of May the goods in question left Grand Rapids over defendant's road, and reached La Otto on the second of June, 1884, and on the same day the defendant delivered the goods in good condition to the Wabash road, and delivered to it a transfer bill, which, with the way-bill issued by the Wabash road, will be found on pages 118 and 119.

The Wabash road carried and delivered the goods to the Missouri Pacific Railroad Company, and by it they were carried to Joplin, and there delivered to the consignee without the production of the bill of lading. In making the way-bill west of La Otto, the words "deliver on bill of lading" were omitted. At the time of the shipment the plaintiff drew a sight draft on Halteman & Co., St. Louis, for the price of the goods, and attached to it the bill of lading. The draft came back unpaid. Halteman & Co. failed, and the plaintiff at that time had not received the pay for its mills.

The plaintiff claims that if the defendant delivered the goods for shipment to the Wabash Company at La Otto without the surrender to it of the original bill of lading, it then acted at its own peril, and if the plaintiff sustained loss thereby the defendant became responsible to the extent of such loss, which in this case was the value of the goods; that the contract made with the defendant was one to carry and deliver the goods at Joplin to the consignee or to his order on presentation of the bill of lading.

There is no doubt but that plaintiff could make such a contract with the defendant, and when so made the defendant would be held responsible for its performance.   The authorities cited by counsel for plaintiff sufficiently establish this.

There seems to be no question but that the goods were carried safely within a reasonable time, and delivered to the consignee.

But three questions are presented upon this record needing consideration in this case:

1. Was the contract one for through carriage?
2. If so, was it violated by the defendant?
3. If it was not a contract for through carriage, did the defendant do or fail to do anything which should make it liable, even though the plaintiff has been damaged?

The first question is the important one in the case.   The character of the contract must be determined from the receipt, the bill of lading, the shipping order, the situation and knowledge of the parties and their agents, and all the circumstances surrounding the transactions having any bearing upon the subject.

There is no evidence of any special agreement upon the subject outside of these.

It is well settled that, in the absence of any special agreement or contract as to trains going over connecting lines, it is the duty of the carrier to carry safely to the end of its line, and there deliver to the next carrier in the route beyond, and by so doing the carrier is discharged.   Hutch. Carr. § 149.   Our own Court has held it well settled that in such case—

"The obligation of the first or any preceding carrier is discharged when he has safely delivered the goods to the next succeeding carrier to whom such delivery is required in order to complete the transportation, without he is bound to carry to destination." *Railway Co. v. McKenzie*, 43 Mich. 609.

There is no claim that there was any treaty for through

"GRAND RAPIDS & INDIANA RAILROAD COMPANY.

"LA OTTO STATION, June 2, 1884.

"Manifest of Freight delivered to Wab. Railroad Company.

| W. B. | Car. | From. | Marks and Consignees. | Destination. | Description of Articles. | Weight. | Rate. | Freight. | Charges. | Total. |
|---|---|---|---|---|---|---|---|---|---|---|
| 3,590<br>5-31-84 | Wabash.<br>10,788 | Grand Rapids. | Order<br>J. B. Seargeant<br>Deliver on B-L. | Joplin,<br>Mo. | 5 roller mills.<br>3 crates tighteners.<br>4 " pulleys.<br>1 tram.<br>O. K.   Wab. | 9,700 | 17-3<br>22-7 | 16 78 | | 16 78 |
| | | | | | | Beyond. | 70 | | | |
| | W. St. L. & P. Ry. Claim No. 1,847. Freight Claim Dept. | | | J. W. Dunwoody, Agt.W. & P. | | | | | | |
| | G. R. & I. R. R. Loss Claim No. 3,256. | | | Tracer No. 4,488. W. St. L. & P. Ry." | | | | | | |

"Way-Bill No. A. D. 4.
"Sheet_____

Pro. No._____
Car No. 10,738.

"WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY.'

"Way-Bill of Freight forwarded from La Otto to East St. Louis, June 2, 1884.  W. & P.

Via_____

Transferred into Car No._____

"Agents will see that the date of delivery is placed after each consignee's signature.

| Consignor and Where From. | Consignee and Destination. | No. of Articles. | Description. | Weights. | Rate. Through. | Rate. Local. | Our Freight. | Back Charges. | Prepaid Our Pro. | Prepaid Foreign Pro. | Received in Good Order, or Condition as Noted, the Articles Consigned to Us upon this Way-Bill. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| G. R. & I. GrandRapids. 3,590 | Order Clark Decker, Greeley, Kans. | 1 | Roller mill. | | | | | | | | |
| | | 1 | Crate tighteners. | | | | | | | | |
| | | 2 | Pulleys. | | | | | | | | |
| | | 6 | Bx. castings. | | | | | | | | |
| | | 1 | Tram. | 3,000 | | 22-1 | 6.81 | 4.50 | | | |
| | | | O. K. | G. R. & I. | | | | | | | |
| Do. | Order J. B. Seargeant, Joplin, Mo. | 5 | Roller mills. | | | | | | | | |
| | | 3 | Crates tighteners. | | | | | | | | |
| | | 4 | " pulleys. | | | | | | | | |
| | | 1 | Tram. | 9,700 | | 22 | 22.02 | 16.78 | | | |
| | | | O. K. | G. R. & I. 12,700 | | 17-3 | 28.83 | 21.28" | | | |

carriage other than what appears in the papers. The plaintiff knew that the goods could not be carried over the defendant's road to the end of the route, but that it was necessary that they should be carried over other roads to reach the place of destination after leaving the defendant's road. It had shipped goods to St. Louis more or less for two years previous, and knew how the carriage was made to that city.

The contract made does not show that any through freight rate was agreed upon, nor is there anything peculiar in the receipt given by the defendant, except that the word " La Otto" does not appear in the blank after the word "at." If this clerical omission had not occurred, I hardly think any one would have regarded the contract as one for through carriage, and this omission should not be held to change materially the character or extent of the liabilities of the parties under their agreement, and the receipt should be read as containing the name " La Otto" in the blank.

This I have no doubt was strictly in accordance with the intention of the parties at the time the goods were shipped, and, if so, that construction should be given by this Court. This construction of the contract of the parties relieves us from the consideration of the second question.

The third question is of more importance. It is not contended but that the property was safely carried and delivered to the connecting carrier in good condition, and within a reasonable time, but it is claimed that it was the duty of the company receiving the goods for carriage to the point of destination not to deliver the same except upon the bill of lading; and if the defendant could be held responsible for the delivery made after the goods left its possession, I should have no doubt of its liability; but, as we have said, its contract of carriage extended no further than La Otto, and if it did its duty in making delivery of the goods, with the proper information regarding their further shipment, to the Wabash Company it certainly cannot be held liable. The delivery of

the goods being properly made, was the necessary information conveyed to the Wabash road that, at the point of destination, they could only be delivered on the presentation of the bill of lading by the consignee? This question is answered from the record, which shows that the manifest or transfer bill which was furnished to the connecting carrier contained the proper information upon that subject at the time the defendant delivered the goods. If there was any other duty resting upon the defendant to perform, to discharge its obligation and liability to the plaintiff, I have failed to discover what it is.

Several errors were assigned upon the admissibility of testimony, which would have been available had the theory of plaintiff's counsel prevailed, but become unimportant in the view taken of the contract of shipment.

I think the judgment of the superior court of Grand Rapids should be affirmed.

The other Justices concurred.