ALDEN C. TAYLOR, and another,

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Kennebec.    Opinion March 15, 1895.

*Railroad.    Common Carrier.    Forwarder.*

A railroad company, as common carrier, may contract to carry goods beyond as well as within the limits of its own line of road.

But where it is sought to extend the liability of the company beyond its own line, the burden is upon the party seeking to establish such liability to show an express contract by which the company became liable as common carrier beyond its own route.

Such contract must be shown by clear and satisfactory evidence.

It will not be inferred from loose language, or where the meaning of the contract is doubtful or uncertain.

The fact that the railroad company connects with other independent roads, and receives goods for transportation beyond the termination of its own line, will render it liable as a forwarder by the connecting line, but not as common carrier beyond its termination, in the absence of any special contract.

Nor will the mere receipt of freight charges over its own line, and also over the lines of connecting but independent roads to the place of destination of the goods shipped, establish a through contract rendering the company liable as common carrier beyond its own route.

ON REPORT.

The case is stated in the opinion.

*S. S. Brown*, for plaintiff.

The whole conduct of the defendant in its various officers shows that it was then understood that the defendant was responsible for the safe arrival of the apples.    The New Hampshire court in the case of *Nashua Lock Co.* v. *Worcester & N. R. R. Co.* 48 N. H. 339, has stated the law applicable to this case with clearness and great force.    The court say : "In the agreed case it is said the goods were received to be forwarded to the place of their destination, and from that phrase an argument is drawn that the agreement of the defendant was to forward to the next party in the line and not to carry through ; but there was no express agreement in any particular terms and we are not called

upon to interpret the language used in any contract. The nature of the undertaking must be inferred from the facts stated in the agreed case. Even in a written contract where the term 'forwarded' is used, if the thing to be done belongs to the business of a carrier, he will be charged as such."

In *Wilcox* v. *Parnell*, 3 Sandf. 610, the court say: "The criticism of the defendant is not just. It applies to the whole distance as well as to the portions of the route where he employed his own means of transportation. He was to forward the goods to New York and not to Buffalo, which he now says was the terminus of his own immediate route. The words used by him can only mean that he was to carry or transport the goods; whether in his own vessels or by using those of others was perfectly immaterial. Defendant gave receipt saying goods should be forwarded per freight train to Chicago."

The testimony indicates that the transaction between the station agent and Taylor was in no way different from an ordinary instance of a party taking goods to a carrier and paying the carrier full rates over the entire route and taking a bill of lading or some document to show the receipt of the goods and the payment of the freight from the point of shipment to the point of destination.

*Edmund F. Webb and Appleton Webb*, for defendant.

Sitting: Peters, C. J., Emery, Foster, Whitehouse, Wiswell, Strout, JJ.

Foster, J. In December, 1892, the plaintiffs at Oakland shipped four carloads of apples on four different days, consigned to parties in Cincinnati, Ohio.

This action is brought to recover damages against the defendant as common carrier, occasioned by the apples freezing while in the course of their transportation from Oakland to Cincinnati.

The plaintiffs base their claim upon the ground that the defendant contracted to transport the apples from the place of shipment to Cincinnati. The defendant, however, claims that

while the apples were to be carried to Cincinnati, the contract was to carry them only over their own route to Portland and there deliver them to the Boston & Maine Railroad, and that having done that safely and in the usual time, their responsibility then and there terminated.

The defendant was an insurer over its own route. But it is agreed that the freezing did not occur on the defendant's line of road, but on some of the connecting lines.

Undoubtedly, a railway company may contract to carry goods beyond as well as within the limits of its own line of road. *Perkins* v. *P. S. & P. R. R. Co.* 47 Maine, 573. But where the liability of the company is sought to be extended beyond its own line, the burden is upon the party seeking to establish such liability, to show that there was an express contract by which the company became liable as common carrier beyond the limits of its own route. Otherwise the common carrier is liable as such only over the extent of its own route, and for safe storage and delivery to the next carrier. There being other independent connecting lines, each road is bound only, in the absence of any special contract, to carry safely over its own route, and safely deliver to the next connecting carrier. In the absence of a special contract to that effect, no such liability will attach. Nor will such agreement or contract be inferred from loose language, or where the meaning of the contract is doubtful or uncertain, but only from clear and satisfactory evidence. *Myrick* v. *Mich. Cent. R. R. Co.* 107 U. S. 102 ; *Burroughs* v. *Norwich & Worcester R. R. Co.* 100 Mass. 26.

In the case of *Myrick* v. *Mich. Cent. R. R. Co. supra*, the principle of law applicable in the conveyance of goods by successive carriers over connecting but independent lines of transportation, has been so clearly stated that it may well be repeated in this connection. The court say : "If the road of the company connects with other roads, and the goods are received for transportation beyond the termination of its own line, there is superadded to its duty as a common carrier that of a forwarder by the connecting line ; that is, to deliver safely the goods to such line, the next carrier on the route beyond.

This forwarding duty arises from the obligation implied in taking the goods for the point beyond its own line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it."

The plaintiffs seek to hold the defendant as a common carrier beyond the terminus of its line by virtue of the receipts or waybills given by the defendant to the plaintiffs at the time of shipment. These receipts contain charges for transportion from Oakland to Portland, and from Portland to Cincinnati. These charges are entered separately. Do these papers prove an express contract or undertaking on the part of the defendant to carry the property from Oakland to Cincinnati? That is the contention of the plaintiffs. The defendant claims otherwise.

We think these receipts do not constitute a special contract, rendering the defendant liable as common carrier of the goods beyond the limits of its own route. They are mere receipts in common use by all railroads. They contain no element of contract whatever, and impose upon the defendant no further obligation than the law itself imposed without them. There is no element in them rendering the defendant specially liable further than it would have been if no such receipts had been given. *Myrick* v. *Mich. Cent. R. R. Co.* 107 U. S. 102; *Nutting* v. *Connecticut River R. R. Co.* 1 Gray, 502. They are an acknowledgment by the defendant that it had received the apples, and pay for transportation to the end of its own line, and also from there to Cincinnati. The defendant's line was but one link in the chain of successive carriers over connecting but independent roads. The apples being "perishable" property, the rule of the company required the station agent to collect the freight from Portland to Cincinnati in advance. This fact of itself does not establish a through contract whereby the defendant would be liable as common carrier beyond its own route. *Myrick* v. *Mich. Cent. R. R. Co. supra*; *Washburn & Moen Mf'g Co.* v. *Prov. & Worcester R. R. Co.* 113 Mass. 490.

In the case last cited, the goods were delivered to the defendant at Worcester for transportion to New York, the defendant at the time of shipment receiving pay for transportation for the entire distance which covered connecting but independent lines. In an action to recover damages against the railroad company it was held that it was not liable as a common carrier beyond the end of its road, and the court say : "If the entire freight money were paid in advance, yet in the absence of any contract by the first carrier to be responsible for the entire distance, he would be considered as receiving it, in part for his own share of the service, and as agent for the next carrier in the series for the residue."

With this view of the case, it becomes unnecessary to consider the further ground of defense set up, and concerning which the evidence is more or less conflicting, viz. : That at the time of delivery and shipment there was a special contract in the form of what is denominated a "release," executed by the defendant and accepted by the plaintiffs, in which it was expressly provided that the defendant was to be bound as common carrier only over its own line, and that it was not to be held liable for any damages arising to the property after the same should have left its possession.

In accordance with the stipulation in the report of this case, the entry must be,

*Plaintiffs nonsuit.*