C. HOFFMAN AND C. B. HOFFMAN, *Copartners under the firm name of C. Hoffman & Son*, v. THE UNION PACIFIC RAILWAY COMPANY.

**No. 301.**

1. COMMON CARRIER— *Connecting Lines — Construction of Contract.* A railroad receiving freight destined to a point beyond its line is only bound, in the absence of a special contract, to carry it safely over its own route and deliver it to the next connecting carrier, but it may agree that it will assume the responsibility of its transportation the entire distance, in which case its liability will be correspondingly extended. Such will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence.

2. ———— *Bill of Lading and Stipulation Examined.* The bill of lading and stipulation in this case examined, and held not to extend the liability of the defendant in error beyond the delivery of the freight to the connecting line.

Error from Dickinson district court ; O. L. MOORE, judge. Opinion filed January 7, 1899. Affirmed.

### STATEMENT.

THE plaintiffs in error delivered to the defendant in error, at Enterprise, Kan., a car-load of flour to be shipped to Hempstead, Tex., and received from defendant in error a bill of lading which constituted the

entire contract between the parties.   The bill of lading was filled out by the plaintiffs on a blank furnished by the defendant and signed by its agent and by the plaintiffs.   The plaintiffs knew that the destination was not on the line of the Union Pacific road, the letters " Via M. K. & T." which were inserted in the bill of lading being understood as an instruction to ship the car by way of the Missouri, Kansas & Texas railway, the nearest connection with which was at Junction City, Kan.   The defendant transported the flour to Junction City, and there delivered it to the Missouri, Kansas & Texas Railway Company.   The latter company transported it to Denison, Tex., and delivered it to the Houston & Texas Central Railway Company, and such company transported it to Hempstead, Tex., but did not deliver it to the consignee or collect the draft therefor which was attached to the bill of lading.   This action was brought to collect the value of the flour from the defendant.   Upon the conclusion of the evidence, the court instructed the jury to find a verdict for the defendant, which was done, and judgment was rendered against the plaintiffs for costs.   To reverse this judgment the cause is brought to this court.

*Stambaugh & Hurd*, for plaintiffs in error.

*A. L. Williams*, *N. H. Loomis*, and *R. W. Blair*, for defendant in error.

The opinion of the court was delivered by

WELLS, J. : The only real question in this case is, Did the Union Pacific Railway Company by its bill of lading contract to deliver the flour to the consignee at Hempstead, Tex., or was its contract only to carry it to the junction of its road with the Missouri, Kansas

& Texas railway, and there deliver it to the connecting line?   The issue is clearly stated by the attorney for the plaintiffs in error in these words : "If the responsibility of the defendant in error ceased upon the delivery of the flour to the Missouri, Kansas & Texas Railway Company at Junction City, the judgment of the district court should be affirmed ; if not, it should be reversed."   This question must be decided on the bill of lading alone, as there was no other contract.   The face of the bill of lading reads as follows :

"UNION PACIFIC SYSTEM.   BILL OF LADING.   NO. 470.

ENTERPRISE, KANSAS, Apr. 1, 189—.

"Received of C. Hoffman & Son the following-described freight, in apparent good order, marked and consigned as noted below, contents and value unknown, to be transported to ⸺ (do not insert point not on the lines of this system), and delivered in like good order to the consignee or owner at said station, wharf, or landing (or, if said freight is forwarded beyond the lines of this system, to such company or carriers whose line may be considered a part of the route to place of destination)., on payment of freight charges, together with such charges as shall have been advanced on the same.

"This contract, and the responsibilities of the parties thereto, is limited and controlled by the conditions as printed on the back thereof, as also by the terms and conditions of this company's printed tariffs, which are hereby declared to be an essential part of this contract.          THE ⸺ RAILWAY COMPANY.
ORIGINAL.                By C. C. TILTON, *Agent.*
                C. HOFFMAN & SON, *Shipper.*

"Consignee, shipper's order ; notify Isaac Heidenheimer.   Destination, Hempstead, Tex.

"(This original bill of lading must be filled out and signed with ink or indelible pencil and delivered to shipper.)                                —

Hoffman v. Railway Co.

| Marks. | Package. | Description of articles. | Weight, subject to correction. |
|--------|----------|--------------------------|--------------------------------|
| ...... | 450½ | Sack flour..................... | 22,600 |
| ...... | 15 | Bbl. " ..................... | 3,000 |
| | | | 25,600 |

"S. C. O. R. & W. Car No. 35,598; initial, U. P. Via M. K. & T. Through rate, 45."

Upon the back of the bill of lading are printed conditions, the only part that has any bearing on the issues of this case reading as follows:

"As a part of this agreement, all other carriers transporting as a part of the through line the property herein receipted for shall be entitled to the benefit of all the exceptions and conditions above mentioned. The company agrees to forward the property to the place of destination named, but its responsibility as a common carrier is to cease at the station where the freight leaves this road, when the property is to be delivered to connecting road or carriers; and in case it is necessary in order that such property reach its destination that it should be forwarded by an ocean route, such property is taken subject to all the terms and conditions contained in the ocean bill of lading of this company, or of any other company completing the transportation."

On the trial the following stipulation was made:

"It is hereby stipulated and agreed by and between the parties to the above-entitled cause, that the following facts shall be taken as true for the purposes of this case, and that the same may be considered on the trial of this case, so far as the same may be material and relevant: On the 1st day of April, A. D. 1892, plaintiffs delivered to defendant at Enterprise, Kansas, a car-load of flour, and the defendant then delivered to plaintiffs a bill of lading, which said bill of lading, with the conditions printed on the back thereof, constitutes the contract between said plaintiffs and said defendant. The paper attached to plaintiffs' petition,

Hoffman v. Railway Co.

with the conditions printed on the back thereof, and marked 'Exhibit A,' is a true copy of said bill of lading and contract.    The words, 'Consignee, shipper's order ; notify Isaac Heidenheimer.    Destination, Hempstead, Tex.,' were intended to mean, and by plaintiffs and defendants were understood to mean, that said flour was to be shipped to Hempstead, Tex., that Isaac Heidenheimer should be notified of its arrival, and that the same should be delivered only upon the delivery of the bill of lading, and subject to such conditions as plaintiffs should name.    Plaintiffs attached a draft to said bill of lading, and delivered the same to the cashier of the Bank of Enterprise, Kansas, for collection for the credit of said plaintiffs. 'Exhibit B' attached to plaintiffs' petition is a true copy of said draft, with the indorsement of instructions written upon the back thereof.    The Bank of Enterprise forwarded said draft and bill of lading, together with a statement of the account of said car-load of flour, copy of which said account is attached to plaintiffs' petition and marked 'Exhibit C,' to a bank at Galveston, Tex., for collection.

"Said Isaac Heidenheimer neglected and refused to pay said draft upon presentation, and said draft, together with said statement of account and bill of lading, was returned by the bank at Galveston, Tex., to the Bank of Enterprise, and by the Bank of Enterprise returned to plaintiffs.    Said draft remains unpaid.

"The defendant transported said car-load of flour from Enterprise to Junction City, Kansas, and the defendant there delivered the same in good order to the Missouri, Kansas & Texas Railway Company.    The M. K. & T. Ry. Company transported the same to Denison, Texas, and there delivered the same, in good order, to the Houston & Texas Central Railway Company.    The H. & T. C. Ry. Company transported the same to Hempstead, Texas, and there delivered the same to some person to the parties to this action unknown, such person not having been authorized by the plaintiffs to receive the same.

"At the time of the receipt and the transportation of said car-load of flour, there was a joint interstate

freight tariff in effect between the Atchison, Topeka & Santa Fe, Kansas City, Fort Scott & Memphis, Southern Pacific, Texas & Pacific, Missouri Pacific, and numerous other western railways, including the Union Pacific, Missouri, Kansas & Texas, and Houston & Texas Central railways; that said joint interstate freight tariff fixed the through rate of a car-load of flour from Enterprise, Kansas, to Hempstead, Texas, at forty-five cents per hundred pounds, of which through rate the Union Pacific received twelve and seven-tenths cents per one hundred pounds for carrying a car-load of flour from Enterprise, Kansas, to Junction City, Kansas, and there delivering the same to the Missouri, Kansas & Texas railroad; the balance of said forty-five cents per one hundred pounds being divided between the Missouri, Kansas & Texas railway and the Houston & Texas Central railway; that said tariff was agreed upon between the different roads in interest prior to the shipment of the car-load of flour in controversy in this case, and said shipment of flour was made under said tariff; that before the commencement of this action the defendant company received its portion of the through rate on said shipment of flour under said tariff.

"Hempstead, Texas, is not, and was not at the time of the shipment of the said car-load of flour, located upon the lines of the Union Pacific system of railroads. Said consignment of flour was carried over the usual and ordinary route for the shipment of flour from Enterprise, Kan., to Hempstead, Tex.

"It is further stipulated and agreed that either party to this action shall be at liberty to offer evidence to prove such other facts as shall be material to the issue in this case."

The plaintiffs in error claim that the defendant in error was responsible for the loss of this flour, either for the reason that the three companies were copartners in this transaction or that the two other roads were the agents of the defendant in error. Neither the theory of copartnership nor that of agency can be

sustained unless we first assume that the defendant in error contracted to transport the flour to its final destination, or that the English rule prevails in this country, that "where a railroad company receives goods to be shipped to a destination beyond its line, in the absence of any special contract it will be held responsible for the safe delivery of the goods at the place of destination."

We do not think that this rule prevails in Kansas. In the first edition of the American and English Encyclopedia of Law, volume 2, page 862, it is said: "In Kansas the question has arisen in a case in which the court intimates an opinion in favor of the adoption of the English rule," and the case of *Berg v. A. T. & S. F. Rld. Co.*, 30 Kan. 563, is cited. A careful reading of this case fails to show any such intimation. In the second edition of the work this is not repeated, but in volume 6, page 613, numerous Kansas cases are cited as supporting the rule that "the initial carrier is liable for losses on lines subject to its management; but where a railroad company receives goods for a destination beyond its line, but makes no express agreement to transport to such point, and does expressly provide that it is not to be responsible as carrier beyond its line, and that its liability is to terminate upon a delivery of the goods to the connecting carrier, it is not liable beyond its own line." We think this rule is clearly deducible from the opinions cited and is the law of this state.

The syllabus of the case of *Berg v. A. T. & S. F. Rld. Co.*, 30 Kan. 561, 2 Pac. 629, reads as follows:

"Where a railroad company received goods for transportation to a point beyond its lines upon a special contract in which is no express agreement to transport to such a point, but the place is only named as

25—8 KAN. APP.

the point of destination, and in which it is expressly agreed that the goods are to be transported over the company's road and delivered in good order to the connecting carrier, and that the company is not to be responsible as carrier beyond its line, and its liability as such is to terminate upon delivery of the goods to the connecting carrier, *held*, (1) that there is no uncertainty or ambiguity in the contract, and that it is clearly only a contract for transportation over its own line and delivery to a connecting carrier; (2) that such contract, being no contract for through transportation to the point of destination, presents no question of an attempt to limit the common-law liability of the carrier as to anything happening beyond its own line; and (3) that the company transporting over its own line and delivering the goods in safety to the connecting carrier performs its contract, and is not liable for any subsequent loss or damage."

This was cited and approved in *A. T. & S. F. Rld. Co. v. Richardson*, 53 Kan. 161, 35 Pac. 1115, and we think disposes of this case. The fair and reasonable construction of the bill of lading is that the defendant should transport the freight to the point where it made connection with the Missouri, Kansas & Texas railway and there deliver it to said connecting line, when its liability should terminate, and this construction is not overthrown by the fact that said defendant by virtue of its through traffic arrangements received more than its usual local rate for its haul, or that it contracted for a through rate and that the other lines on the through route should have the benefit of all the exceptions and conditions by it required.

The judgment of the court below will be affirmed.

McELROY, J., concurring.

MAHAN, P. J., dissenting.