Decided 10 March; rehearing denied 21 April, 1902.

## TAFFE· *v.* OREGON RAILROAD COMPANY.

[67 Pac. 1015; 68 Pac. 732.]

CARRIERS—CONNECTING LINE—CONTRACT OF SHIPMENT.

A contract of shipment of goods consigned to New York was made upon the carrier's printed form of bill of lading, containing a blank space for the place of destination, with directions not to insert points not on the carrrier's lines. The blank was not filled. The written part of the contract provided for "fastest passenger train service, consigned as above." A stipulation relieved the carrier from liability for loss or injury to the property, except on its own lines. *Held,* that the blank space for the destination of the goods was reserved for points on carrier's own lines, and that the written part of the contract was a designation of the destination with a contract as to the kind of service to be furnished to the termination of the line of the contracting company, subject to the stipulation as to liability beyond its own line; and therefore the contracting carrier was not liable for loss or damage on lines beyond its own.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by I. H. Taffe against the Oregon Railroad & Navigation Co. On September 17, 1898, the plaintiff shipped at Celilo Station, in Oregon, by defendant's railroad, one car load of fresh salmon, consigned to Chesebro Bros., Fulton Market, New York City. The bill of lading, signed by the shipper and the defendant's agent, so far as it is necessary to set the same forth for an intelligent understanding of the controversy, is as follows:

FORM. NO. 593.        **BILL OF LADING**    No._____

## Oregon Railway & Navigation Co.

E. McNEILL, RECEIVER.

_____

*Celilo, Sept. 17th*    *1898*
....................................................................................

*Received of*___*I. H. Taffe*_____

the following described freight, in apparent good order, marked and consigned as noted below, contents and value unknown, to be transported to_____
Do not insert point not on the lines of this system.
and delivered in like good order to the consignee at said station, wharf

or landing (or, if said freight is to be forwarded beyond the lines of this company, to such company or carriers whose line may be considered a part of the route to the place of destination), on payment of freight charges, together with such charges as shall have been advanced on the same.

This contract, and the responsibilities of the parties thereto, is limited and controlled by the conditions printed on the back hereof, as also by the terms and conditions of this company's printed tariffs, which are hereby declared to be an essential part of this contract. * *

OREGON RAILWAY & NAVIGATION CO.

E. McNEILL, Receiver.

ORIGINAL        By   *E. B. Coman, Condr.*   Agent

*I. H. Taffe,*   Shipper

(This original Bill of Lading must be filled out and signed with ink or indelible pencil and delivered to Shipper.)

CONSIGNEE, MARKS AND DESTINATION

*Chesebro Bros., Fulton Market,*

*New York*

*City*

| No. Packages | ARTICLES. | WEIGHT Subject to Correction |
|---|---|---|
| | *One F. G. E. car No. 14685* | |
| | *fresh salmon about* | |
| | *9½ tons on fastest passenger* | |
| | *train service consigned as above* | |

The following is a true copy of the back of said bill of lading, so far as material here:

CONDITIONS.

*    *    *    *    *

The company will not be responsible or liable for any loss, damage, or injury to property except upon its own lines, and will not be responsible for any loss, damage or injury to property after the same shall have been tendered to any connecting carrier or freight man for further transportation.

Loss having occurred by reason of delay in transportation and a decline in the New York market, this action was instituted to recover damages therefor based upon the bill of lading. The defendant, for a separate defense, alleges, in effect, that it is the owner of a line of railroad extending from Portland to Huntington, at which point it connects with the Oregon Short Line, extending to Granger, where the latter line connects with the Union Pacific Railway, extending to Council Bluffs, at which point other connecting lines extend to Chicago, and from there other lines extend to New York City; that defendant did not own, or have any interest in the operation of, any of said lines of railway east of Huntington, all of which plaintiff well knew, and that the contract mentioned in the complaint, and by the answer fully set up, was entered into with full knowledge of said matters; that on the 17th day of September, 1898, at Celilo, Oregon, the plaintiff tendered to E. B. Coman, the conductor on the fastest east-bound passenger train, the car of salmon in question; that when so tendered the plaintiff and said conductor signed the bill of lading, and that plaintiff and defendant entered into no other contract relating to the transportation, other than evidenced thereby; that the defendant carried said car to Huntington by said fastest passenger train without delay, and there delivered the same, as a part of said train, to the Oregon Short Line Railroad Co., to be forwarded through like trains to destination; that said car was immediately transported by said fastest passenger train on its journey to Granger by the Oregon Short Line Railroad Co., without delay; that from thence said car was so transported to Chicago, and that the delay complained of occurred after the same had reached Chicago, without fault or negligence on the part of the defendant, but solely as a result of the negligence and fault of the carriers operating east of Chicago, in failing to transport said car by fastest train service on said roads, and not otherwise. A demurrer interposed to this defense was sustained, and the case went to trial on the stipulation of the parties, whereby it was agreed that the bill of lading constituted the sole agreement between the

parties for the transportation; that defendant owns and operates a line of railroad extending from Portland, through, Celilo, eastward to Huntington, where it connects with the Oregon Short Line, from whence other connections are made with railroads extending to Council Bluffs, thence to Chicago, and from thence to New York City; that the car was transported by the defendant on the fastest passenger train service to Huntington, and there delivered, as a part of the train, to the Oregon Short Line Railroad Co., to be forwarded by said train and through like trains to New York City; that said car was transported to Chicago on like fastest passenger trains without delay, but at some point east of that place it was, in violation of the instructions of the defendant to the Oregon Short Line Railroad Co., dropped from said fastest passenger train service, and was thereby delayed. An objection interposed by plaintiff to the introduction of the latter clause of the stipulation in evidence being sustained, and no other evidence being offered, the court instructed the jury to return a verdict for the plaintiff; and judgment having been entered upon the verdict so returned, the defendant appeals.   REVERSED.

For appellant there was a brief over the name of *Cotton, Teal & Minor,* with an oral argument by *Mr. William W. Cotton.*

For respondent there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Rufus Mallory.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

Two errors were assigned; one relating to the court's action in sustaining the demurrer to the separate defense, and the other in rejecting, as immaterial and irrelevant, the latter clause of said stipulation, both of which present but a single question; that is, whether the contract or agreement relied upon by plaintiff, and which is admitted by both parties to be

the only one entered into with reference to the transportation
of the car of salmon, is an undertaking on the part of the
defendant to carry it to Huntington only, and deliver it to its
connecting line, or to carry it through to Fulton Market, New
York City. The contract, like others, must ·be construed by
looking through the whole instrument, and in the light of the
circumstances attending the transaction' and its execution by
the parties concerned. The law applicable to the simple re-
ceipt or acceptance of goods by common carriers, directed or
consigned beyond the line of the carrier, by the conceded
weight of American authority, requires them to be transported
to the terminus of its lines, and there delivered to a connecting
carrier to be forwarded to their destination, and with this
the responsibility ceases. This is the doctrine of the Supreme
Court of the United States and a large majority of the state
courts: Hutchinson, Carr. § 149; 4 Elliott, Railroads, §§ 1432,
1435; *Gray* v. *Jackson,* 51 N. H. 9 (12 Am. Rep. 1); *Hoffman*
v. *Cumberland R. Co.* 85 Md. 391 (37 Atl. 214); *Michigan
Cent. R. Co.* v. *Mineral Springs Mfg. Co.* 83 U. S. (16 Wall.)
318; *St. Louis Ins. Co.* v. *St. Louis, T. H. & I. R. Co.* 104 U. S.
·146; *Myrick* v. *Michigan Cent. R. Co.* 107 U. S. 102 (1 Sup.
Ct. 425); *Taylor* v. *Maine Cent. R. Co.* 87 Me. 299 (32
Atl. 905); *Dunbar* v. *Port Royal & A. Ry. Co.* 36 S. C. 110 (15
S. E. 357, 31 Am. St. Rep. 860); *Ortt* v. *Minneapolis & St. L.
R. Co.* 36 Minn. 396 (31 N. W. 519); *Rickerson Roller Mill
Co.* v. *Grand Rapids & I. R. Co.* 67 Mich. 110 (34 N. W. 269);
*McEacheran* v. *Michigan Cent. R. Co.* 101 Mich. 264 (59
N. W. 612); *Hoffman* v. *Union Pac. R. Co.* 8 Kan. App. 379
(56 Pac. 331). ''A railroad company is a carrier of goods
for the public,'' says Mr. Justice FIELD in *Myrick* v. *Michigan
Cent. R. Co.* 107 U. S. 102 (1 Sup. Ct. 425), ''and as such
is bound to carry safely whatever goods are intrusted to it for
transportation, within the course of its business, to the end
of its route, and there deposit them in a suitable place for their
owners or their consignees. If the road of the company con-
nects with other roads, and goods are received for transpor-
tation beyond the termination of its own line, there is super-

added to its duty as a common carrier that of a forwarder by the connecting line; that is, to deliver safely the goods to such lines, the next carrier on the route beyond. This forwarding duty arises from the obligation implied in taking the goods for the point beyond its own line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it."

By the English rule, and by the doctrine of some of the courts of this country, such a receipt of goods for transportation, without else to indicate the intent of the parties concerned, implies, *prima facie*, an undertaking or contract upon the part of the carrier to convey them to the point of destination, as indicated by the direction or consignment, whether the carrier owns or controls all the lines of transportation in the route of their travel or not: Hutchinson, Carr. §§ 146, 147; 4 Elliott, Railroads, § 1435. The disinction between the two rules is that by the former the duty implied is to carry the goods to the end of the receiving carrier's line, and there to deliver them to the next carrier in the route, to be forwarded thereby [*Michigan Cent. R. Co.* v. *Mineral Springs Mfg. Co.* 83 U. S. (16 Wall.) 318]; while by the latter the duty implied is to carry them through to their destination. The engagement, of course, may be varied in either case by express contract, or the circumstances attending the shipment may raise a different obligation by implication: and thus, in order to exempt the carrier beyond its own lines, under the English rule, there must be an express or implied limitation or restriction of primary liability; and to enlarge the liability, under the American rule, there must be an express or implied understanding to that effect, aside from the mere receipt of the goods destined to a point beyond the route of its own authority. The so-called American rule is perhaps better grounded in equal justice towards the shipper and carrier, and in public policy, and is therefore preferable upon principle, as well as by the preponderance of American authority.

Both the parties to the shipment were cognizant of the fact

that defendant's line of railroad extended no further east than Huntington. This is admitted by the averments in the separate defense, which must be taken as true as against the demurrer, and by the stipulation entered into relative to the facts attending the controversy; and it must be supposed that the contract was entered into in view of the legal rights of the shipper and carrier. As the bill of lading contains the whole contract, and does not depend for substantiation upon the proof of extraneous facts or circumstances, the controversy is resolved into a question of construction, which is solely for the court to determine. Plaintiff's counsel submit that, by a proper construction of the contract, it should be made to read as follows: "The Oregon Railroad & Navigation Co., has on this 17th day of September, 1898, received from I. H. Taffe, at Celilo, Oregon, one F. G. E. car, No. 14685, containing nine and one half tons of fresh salmon, consigned to Chesebro Bros., Fulton Market, New York City, which it agrees, in consideration of the freight to be charged therefor, to transport without unnecessary delay, by the fastest passenger train service, to Fulton Market, and there deliver the same to the consignee." Such a rendition, it is insisted, is the reasonable deduction to be made from the manner in which the contract was drawn, and the particular kind of service to be afforded. Referring to the bill of lading, it will be noted that the blank following the words "to be transported to" is left unfilled, and the words "on fastest passenger train service" are written, which allows them to stand in preference to printed matter. As to the blank, it is apparent from an inspection of the instrument what was intended to be inserted. There is a direction immediately beneath not to insert points not on the line of this system; so that its manifest use was for points on the line of the Oregon Railroad & Navigation Co.'s transportation system, and could not serve the purpose of inserting any point of destination beyond its lines. And there is no particular significance to be attached to the fact that the blank was not supplied, as it cannot be assumed, in the absence of evidence respecting the point intended to be inserted, and in

direct contravention of the instruction on the face of the instrument itself, that it was intended for the place of final destination.   The omission, therefore, must be regarded as clerical in character, and affords no suggestion of significance for construction:   *Myrick* v. *Michigan Cent. R. Co.* 107 U. S. 102 (1 Sup. Ct. 425) ; *Rickerson Roller Mill Co.* v. *Grand Rapids & I. R. Co.* 67 Mich. 110 (34 N. W. 269) ; *Phillips* v. *North Carolina R. Co.* 78 N. C. 294; *Ortt* v. *Minneapolis & St. Louis R. Co.* 36 Minn. 396 (31 N. W. 519) ; *Hoffman* v. *Union Pac. R. Co.* 8 Kan. App. 379 (56 Pac. 331).   A further reading of the first clause makes it more apparent that the place of destination, where beyond the lines of defendant's system, was not intended, for there is inserted parenthetically a clause, in effect, that, if such freight is to be forwarded beyond the lines of the company, then it is to be delivered to such company or carriers whose line may be considered a part of the route to the place of destination; and thus does the contract, by its very terms, read into it the law as we have ascertained it to be when the shipment is to a point beyond the lines of the company receiving the goods for carriage,—containing simply a direction denoting the place of consignment.   The particular kind of service to be rendered was transportation "on the fastest passenger train service."

The stipulation must certainly prevail to its fullest import, but what is its significance?   Looking upon the face of the bill of lading, we find by the first clause that the goods were received of Taffe, "marked and consigned as noted below," and the written part denotes a consignment "as above," and in either instance the reference is to the direction, "Chesebro Bros., Fulton Market, New York City," so that the consignment is nothing more than the ordinary one of designation by direction of the place of destination, without restriction or enlargement.   This brings us to the especial and emphatic contention of counsel, which is that the service contracted for was a special one; that is to say, that the company agreed to carry a perishable quality of freight by fastest passenger train service, and, being a service that neither it nor any con-

necting road was required or obliged to perform, that therefore it must be presumed plaintiff contracted for through transportation. We are not satisfied that such conclusion follows. Plaintiff, by the allegations of his complaint, has, in effect, made the defendant, at least, if not all connecting lines, a common carrier of the kind of freight thus offered, and in the manner designated; for it is averred that, "when requested to do so by shippers, it was the custom and practice of the said defendant, as such common carrier, in consideration of the payment of the sums charged therefor by the defendant, over and above the amount charged for ordinary freight transported by freight trains, to receive perishable freight in refrigerator cars, requiring speedy transportation, and to attach such cars containing such freight to, and transport the same over said line and connecting lines by and as a part of, said passenger trains, to the said city of New York." This allegation is admitted by the answer, except as there is any implication of the practice or custom on the part of the defendant to accept and carry such freight in the manner designated to the City of New York, or any point beyond its lines. Under the conditions thus existing, the plaintiff has made the defendant, at least, a common carrier of fresh salmon, in the manner described, for it could reject no freight of a like kind for like transportation by fastest passenger train service: 4 Elliot, Railroads, §§ 1474, 1475; *Beard* v. *Illinois Cent. R. Co.* 79 Iowa, 518 (44 N. W. 800, 7 L. R. A. 280, 18 Am. St. Rep. 381); *International & G. N. R. Co.* v. *Young* (Tex. Civ. App.) 28 S. W. 819; *North Penn. R. Co.* v. *Commercial Nat. Bank,* 123 U. S. 727 (8 Sup. Ct. 266).

Now, are we to assume that the defendant is the only company that is a common carrier in that sense, or would it be more reasonable to assume that, by reason of the fact that it was willing to accept goods of the kind to be carried by a rapid service, its connecting roads are doing the same thing? If it was once conceded that its road was the only one conveying the special kind of freight on the particular condition, the presumption might be said to follow, without more, that

it was the intendment to contract for carriage to destination; otherwise the freight would not have been received. But such is not the case here, and we would rather incline to the view that the parties contracted with reference to the preferable assumption that other connecting lines were customarily engaged in like freight traffic, and were therefore bound to the same service when like freight is offered. But whether the freight was received to be transported as by a common carrier or in a private capacity, there must be an express or implied undertaking to carry beyond the lines of the carrier first receiving the goods for transportation, and such a one is not deducible from the contract relied upon. The stipulation contained upon the back, and expressly made a part of it, also lends support to this view. The expression "on the fastest passenger train service" is simply a designation as to how the freight should be carried, being the kind of service contracted for, which language is employed with reference to the car of fresh salmon "consigned as above." It does not indicate an intendment of carriage to destination any stronger than if it had read "on ordinary freight train service;" so that the agreement on the back should be accorded the same weight that it would have if the contract was one with reference to the receipt of ordinary freight, to be carried in the ordinary way. The stipulation referred to is that "the company will not be responsible or liable for any loss, damage, or injury to property, except upon its own lines, and will not be responsible for any loss, damage, or injury to property after the same shall have been tendered to any connecting carrier or freight man for further transportation," so that, construing the contract as a whole, in the light of the circumstances and conditions under which it was entered into and executed, it must be held to be an undertaking to carry to Huntington, and there deliver in good order to the Oregon Short Line Railroad Co., the next connecting line. True, an ordinary freight bill of lading was used, but it is reasonable to suppose that it would not have been used if it had not been

considered appropriate to evidence the true nature of the contract.

We have not overlooked the case of *Colfax Mount Fruit Co. v. Southern Pacific Co.* 118 Cal. 648 (50 Pac. 775, 40 L. R. A. 78). That case, however, turns upon the interpretation of the meaning of the word "forward," which was used in three different and distinct clauses of the contract; and, it having been necessarily used in two of them in the sense of "to carry," it was quite logically held to have been employed in a like sense in the other clause, so the contract was interpreted as an undertaking to carry to destination, and this upon the face of the instrument itself. The case could not, therefore, be controlling. From these considerations, the judgment of the trial court will be reversed, and the cause remanded for such further proceedings as may seem proper, not inconsistent with this opinion.                REVERSED.

Decided 21 April, 1902.

ON MOTION FOR REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

In plaintiff's petition for a rehearing the opinion in this cause seems to be interpreted as holding to the doctrine that the stipulation in the bill of lading, "on fastest passenger train service," "was a mere matter of designation of one service among many, and imposed no other obligation upon the defendant than if the designation had been by ordinary freight, assuming thereby that it, in either case, had no binding effect upon the company, and, even if the company had accepted the goods under either designation, it was not bound to carry them as directed, but might disregard its agreement at pleasure." If such is the effect of the decision, we agree with counsel that it is an "impossible" doctrine. But the opinion does not so hold. The contract of shipment was interpreted, as other contracts are, by looking through its whole scope, and in the light of the circumstances attending its execution. One feature of the attending conditions, and an

important one, was admitted by the pleadings, which was that
it was the custom and practice of the defendant, when re-
quested by shippers, to receive perishable freight requiring
speedy transportation in refrigerator cars, and to attach such
cars to, and transport the same over its lines, by and as a part
of, its passenger trains.    The allegations of the complaint ex-
tended further, and included the whole route to New York
City in the service; but they were treated as denied as to the
entire route, and hence not pertinent as bearing on the con-
struction of the contract, except as the alleged custom and
practice of carrying perishable freight applied to defendant
alone and to its own lines.    This made the defendant a com-
mon carrier of this kind of freight in the way designated,
namely, ''on the fastest passenger train service.''    From this,
and the fact that the company was willing to contract for
such service, we concluded it the preferable assumption that
other connecting lines were offering a like service, and were
common carriers in that sense as was the defendant, not that
the contract entered into with the Oregon Railroad & Navi-
gation Co., was a contract with every other connecting line
in the route to New York City.    If common carriers, how-
ever, in the sense that the pleadings make the defendant, they
would be in duty bound to accept the perishable freight offered
and carry it by fastest passenger train service, as they would
be required to accept ordinary freight on freight train service
and carry it to the place of consignment.    These are con-
ditions or circumstances attending the entering into the con-
tract of shipment involved.    So, in our construction of the
contract, taking into consideration all of its terms of positive
stipulation and of negation, we say the expression, ''on fastest
passenger train service,'' is simply a designation as to how
the freight should be carried, being the kind of service con-
tracted for, and distinguishes it from such service as is offered
for the carriage of ordinary freight, and, therefore, that the
stipulation has no greater significance than if a stipulation
''on ordinary freight train service'' had been introuduced in a
shipping contract for ordinary freight.    There was no inti-

mation intended by the opinion that such a stipulation might be disregarded at pleasure, and was of no binding force upon the carrier. It bound the defendant to carry by that service, and if connecting lines were engaged in the same service, and common carriers in that sense, they would be as much bound to pick it up and carry it on with like celerity as they would be bound to pick up ordinary freight offered on ordinary freight train service and carry it in that way to the end of their lines or to destination. In this light, the words "on fastest passenger train service," were no more significant of an undertaking to carry to destination than the words "on ordinary freight train service," if introduced in a contract for the shipment of ordinary freight. But in any event, whatsoever be the capacity in which the freight was received to be transported, whether as common or private carrier, there must be an express or implied undertaking to carry beyond the lines of the carrier receiving the goods. "Fulton Market, New York City," is but a designation of the place of consignment, and these words, and the stipulation, "on fastest passenger train service," do not constitute an agreement of carriage to that place, unless another stipulation is read into the contract, and this the court is not at liberty to do. So that upon the whole we are satisfied that the contract is susceptible of no other interpretation than an undertaking to carry the freight to Huntington, and there deliver it to the Oregon Short Line, and that none other can reasonably be extracted from it.

The petition for rehearing is therefore denied.

REHEARING DENIED.