STEPHEN H. CONDICT and others *v.* THE GRAND TRUNK RAILWAY.

(GENERAL TERM, FOURTH DEPARTMENT, FEBRUARY, 1871.)

Where a carrier receives goods for transportation, addressed to a point on the line of a connecting carrier, and receives a price for the entire distance, it undertakes that the goods shall be carried through for the price paid; and this is so whether it is bound, merely for transportation by the connecting road without increased charge, or for the risks of a common carrier to the place of destination.

In the absence of proof of authority to contract as agent for connecting lines, a carrier, which receives charges for carriage to places on such lines, is presumed to contract for the whole distance on its own account.

The defendants' road from B. terminated at S., where it connected with railways to C.; it received goods at B. consigned to C., and freight charges for the whole distance; at S. it offered the goods to the connecting carriers, which refused to transport except upon an advance upon the charges paid by the shipper; the defendants stored the goods, provided transportation by water as soon as possible, by which it sent forward from S. its consignments to C., in the order of their receipt; before the goods in question were reached, the store-house burned (without fault of the defendants), and they were destroyed. — *Held*, that the consignees could recover their value from the defendants.

*Held*, further, that this was so notwithstanding the defendant contracted, to forward the goods beyond its own line, " by public carrier or otherwise, as opportunity may offer, without any claim for delay against the company for want of opportunity to forward them;" that its liability should cease when connecting carriers " shall have received notice that the company is prepared to deliver them the *goods* for further conveyance;" and " that all property contracted for at a through rate or otherwise to places from or beyond the line of (defendants') railway, if shipped by water, shall be entirely at the risk of the owner from fire," &c.

*Held*, also, that the defendants were not at liberty, without consent of the consignees, to substitute water for rail transportation, the clause in the contract respecting carriage by water having application only where the usual mode of transportation was by water.

THIS was a motion by the defendants for a new trial on a case made, and exceptions, ordered to be heard in the first instance at General Term.

The action was brought to recover the value of merchandise alleged to have been received by the defendants, as common carriers, at Buffalo, addressed to the plaintiffs at Chicago. The plaintiffs proved delivery of the goods to the defendants at Buffalo, as alleged; and the defendants set up and proved a special contract for transportation, under which it claimed exemption from liability, which contained, among other provisions, the following:

"10. That all goods addressed to consignees resident beyond the places at which the company have stations, and respecting which no directions to the contrary shall have been received at these stations, will be forwarded to their destination by public carrier or otherwise, as opportunity may offer, without any claim for delay against the company for want of opportunity to forward them; or they will, at the discretion of the company by whom they have been received, be suffered to remain on the company's premises, or be placed in shed or warehouse (if there be convenience for receiving the same), pending communication with the consignees, at the risk of the owners for any damage arising from any cause whatever. But that the delivery of the goods by the company will be considered as complete, and the responsibility of the company will be considered to have ceased, when such carriers shall have received notice that the company is prepared to deliver them the goods for further conveyance. And the company hereby further give notice that they will not be responsible for any loss, damage or detention that may happen to goods so sent by them, if such loss, damage or detention occur after the said notice, or beyond their said limits. That all property contracted for, at a through rate or otherwise, to places from or

Condict *v.* The Grand Trunk Railroad Company.

beyond the line of the Grand Trunk railway, if shipped by water, shall be entirely at the risk of the owner from fire, collision, and all the dangers of the navigation of whatsoever nature and kind. And in case of loss or damage to any goods for which this company or connecting lines may be liable, it is agreed and understood that they shall have the benefit of any insurance effected by or for account of the owner of the said goods, before any demand shall be made."

The pleadings and facts proved are sufficiently stated in the opinion of the court.

*E. C. Sprague,* for the defendants.

*Sherman S. Rogers,* for the plaintiffs.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—MULLIN, P. J. There are two counts in the complaint. In the first it is alleged that the plaintiffs, in November, 1866, delivered to the defendant, a common carrier, at Buffalo, two boxes of goods, to be carried over its own railroad, and other railroads connected therewith, from that place to Chicago, within a reasonable time, at the rate of sixty-four cents per 100 pounds; that they were received to be carried to Chicago for the compensation aforesaid; but, although a reasonable time has elapsed for the transportation and delivery of said goods, they have not been delivered.

In the second count it is alleged that the defendant received the goods, to be carried from Buffalo to Sarnia, over its own road and connecting railways, and there to be delivered to another carrier, for transportation to Chicago, for sixty-four cents per 100 pounds; but, although a reasonable time has elapsed, the said goods have not been carried and delivered as required by the contract.

The answer denies the allegations of the complaint, and avers that the goods were received under a special agreement, whereby the defendant was exempt from the loss of the said

Condict *v.* The Grand Trunk Railroad Company.

goods. It was proved that the goods were carried over defendant's road to Sarnia, the terminus of the defendant's road in Canada, and that there were two railroad companies running in connection with defendant's road to Chicago, but that neither of said roads would receive the boxes in question and carry the same to Chicago at their *pro rata* share of sixty-four cents per 100 pounds from Buffalo to Chicago, and insisted that the price should be raised over defendant's road as well as over the other connecting roads. The goods were stored by the defendant upon their arrival, on the 10th of November, in one of their store-houses, where they remained until the 16th of that month, when they were destroyed by fire.

When the defendant found that the connecting roads would not receive the goods to be carried at the rate agreed on with the plaintiffs, it proceeded to procure vessels and to send the goods by them to Chicago, and that vessels were procured as soon as could be, and the goods sent forward in the order of receipt; that between the time of the first refusal by the connecting roads to receive the goods, which was about a week prior to the 1st of November, and the time of the fire, there had been a large accumulation of goods at Sarnia.

The proof of the contract alleged in the complaint is a receipt, signed by defendants' agent, for said boxes, addressed to plaintiffs at Chicago, subject to defendants' tariff, and under the conditions stated on the other side of the receipt, at sixty-four cents per 100 pounds, delivered in Chicago.

There was put in evidence a paper signed by the shippers, requesting defendants to receive the property, and containing the other matters set out in the receipt signed by the company.

It was proved that the defendants were accustomed to receive and execute contracts similar to the foregoing, and that such was their custom in 1866.

The first and important question in the case, arising on these facts, is, with whom was the contract to carry the goods from Buffalo to Chicago made? Was it with plaintiffs, on its own behalf, to carry for the whole distance by rail, or was it

Condict v. The Grand Trunk Railroad Company.

with it, in its own behalf, to carry to Sarnia, and there to deliver to a connecting road, for which connecting road defendant was contracting as agent? Or was it with it, in its own behalf, to carry by rail to Sarnia, and from thence to Chicago by vessel?

Upon the answers to be given to these questions, depends the right of the plaintiffs to recover in this action.

The contract evidenced by the papers was between the defendant and the consignors. No other party participated in the making, or assumed any obligation in respect to the property or its carriage. The price agreed on was for the whole distance from Buffalo to Chicago. It necessarily follows, that the defendant was bound to see that the property was carried from Buffalo to Chicago for the price thus fixed. It was wholly immaterial whether the defendant carried it, or other companies became obligated to carry it, for whom it was agent. The defendant was obligated to see that the plaintiffs were required to pay no more than the stipulated freight. If more was charged, it was liable to the plaintiffs for the excess so charged.

I infer from the facts proved that defendant had assumed to contract for itself and connecting lines to carry freight from Buffalo to Chicago, at prices mutually agreed on or fixed by itself, and the other companies had received and carried the property under such contracts.

But it would seem that, just before the receipt of the goods in question, the connecting lines had repudiated the arrangement, and refused longer to carry goods pursuant to it.

Notwithstanding this repudiation, the contract in question was made without, so far as we are informed, any intimation to the consignors that goods would not be sent forward by rail to Chicago, at the price agreed on.

In the absence of any proof that defendant was authorized to bind the connecting lines by a contract to carry at a fixed price, we must assume that the defendant is the party contracting to carry the whole distance, as a price is fixed for the whole distance.

The result would be the same if we should hold the defendant bound only by the price, leaving the agreement to carry to be implied, as to the connecting roads. In other words, the defendant might be bound only to see that the goods were carried at the price fixed by it, while the connecting roads would be liable, upon the implied contract, for all such damages as should be sustained by the carrier, and for which, carriers are by law liable.

If the defendant is to be held to have contracted to carry to Chicago, or if it was only bound to carry to Sarnia, and there deliver to a connecting road, it has not performed the contract. It did neither. On the contrary, it carried the property to Sarnia, and there stored it for several days, where it was destroyed by fire.

Do the conditions in the contract exempt it from liability? If the defendant was bound to carry the goods to Chicago within a reasonable time after receipt of the same, this was not done. It is no excuse that the connecting roads would not receive the goods. There is no such exemption provided for. That was one of the hazards the defendant assumed, and should have provided against in his contract.

If defendant's contract bound it to carry only to Sarnia, and there deliver to a connecting road, and only to see that the goods were carried at the price agreed upon, it is still liable, because of the refusal of the other companies to receive and carry the goods was put expressly on the ground that the price was lower than the new tariff of freight; and it is not shown that these companies had ever agreed to be bound by the rates charged by the defendant.

In the absence of all evidence, we cannot assume that the refusal was wrongful.

The defendant is placed in the position of having assumed to fix a rate of freight for its connecting companies, without their consent. Because they will not conform to it, it retains the goods delivered to it to be carried until those companies will consent to receive and carry them, and, while so detained, the loss by fire occurs.

Such a detention is unauthorized ; and, had it not occurred, the loss would not have happened.

The tenth condition annexed to the contract provides that goods consigned to residents beyond defendant's road, as to which no directions to the contrary are given, will be forwarded to their destination by public carrier or otherwise, as opportunity may offer, without claim for delay against the defendant for want of opportunity to forward them.

This condition does not help the defendant, as the delay is caused by its refusal to pay to the connecting line its charges for carrying said goods to their destination.

The defendant was bound to pay whatever sum was necessary to be paid to secure the carriage of said goods, or to send them forward, subject to charges, and leave the consignee to recover of defendant the amount paid to obtain possession of the goods beyond the contract price.

The tenth condition further provides that the liability of defendant will cease when the connecting lines shall have received notice that it (defendant) is prepared to deliver them the goods for further conveyance.

The defendant would have been relieved from liability, under this clause of the condition, had it delivered the property without requiring the company to whom it was offered to carry it at the price agreed upon between the defendant and the consignors. But, unless the company to whom the property was offered was obliged to carry at the price agreed upon, it was justified in refusing to receive it, and defendant became liable for whatever damages resulted from the omission to deliver.

Exemption from liability is also claimed, under the last clause of the tenth condition. That clause provides that all property contracted for at a through rate, or otherwise, to places beyond defendant's line, if shipped by water, should be entirely at the risk of the owner from fire, collision, and all the dangers of navigation, of whatever nature or kind.

In order that this clause may be applied to the property in question, it must be assumed that the defendant held it to be

Condict *v.* The Grand Trunk Railroad Company.

carried by itself to Chicago by water, at the time the loss occurred.

Nothing is said in the contract about the carriage of these goods by water. The custom, up to and including the time this contract was made, was to carry by rail. It was made in November, the most hazardous season in the year to navigate the lakes. It is not to be assumed, in the absence of proof, that the consignors knew that defendant intended, in any contingency, to carry his property any part of the way by water, thereby abandoning the mode of carriage theretofore adopted, and substituting a new one, and a vastly more dangerous one.

The defendant had no right to detain the goods in its storehouses until it could procure vessels to enable it to complete the carriage of the goods to Chicago.

It was bound to carry by rail. The clause of the condition in question applies to property received by defendant to be carried over its own road, directed to places beyond its line, and to which the usual mode of transportation is by water, and not by rail, and to property which the owner or consignor had directed to be sent by water.

Before the defendant could dispense with the aid of the connecting railroad lines, and substitute carriage by water in its place, it was bound to notify those who employed it of the change; otherwise the presumption would be that the property was to be carried in the usual and customary manner.

Had it been provided that the freight agreed upon was the freight for carriage by rail to Sarnia, and by water from Sarnia to Chicago, there would be some color for claiming, under the clause in question, that the detention at Sarnia was necessary because of the great pressure of freight, but there is no proof on the subject, thus authorizing the inference that the goods were received to be sent to Chicago by rail.

Indeed, it would be difficult to discover any reason for the offer of the goods to the connecting lines of road, if by the contract the defendant had the right to carry from Sarnia by water.

For these reasons, I am of the opinion that the defendant is not exempt from liability for the loss of the goods, by reason of all or any of the conditions annexed to the contract.

The court properly refused to charge the jury, at the defendant's request, that the plaintiffs were not entitled to recover. On the contrary, the right was clearly established.

The defendant's counsel, when asked whether there was any question for the jury, told the court he knew of none, except whether the goods were burned. The judge told him he should charge that it was their duty, on the evidence, to find that they were burned, and he did so instruct them, and defendant's counsel excepted.

There was no conflict of evidence as to where the goods had been deposited at Sarnia, nor but that the shed in which they were stored had been destroyed by fire. It is true no one testified to having seen them in the building before the fire ; but it was proved that goods arriving at the time these arrived were stored in the shed that was destroyed ; that these goods had never been seen since, and there was no reason to suppose that they had been stolen. The evidence justified the instruction.

The motion for a new trial is denied.