DETROIT & BAY CITY RAILWAY COMPANY v. JAMES McKENZIE.

*Railroad companies—Carriage beyond terminus—Unreasonable delay—Action to recover back excessive charge for transportation.*

A railroad company receiving and receipting goods for transportation to a point beyond the terminus of its road, is not to be understood as undertaking to carry the goods beyond such terminus, unless there is an express promise to that effect.

But if the company receipts the goods to be transported to a point beyond its line for a definite sum named, and the consignor is charged a larger sum therefor, the receipting company is responsible to the consignor for the excess.

In an action to recover such excess, a variance in describing the defendant's undertaking as one for the carriage of the goods for the whole distance, is immaterial.

In an action against a carrier, when unreasonable delay is complained of, and the loss of a market is claimed, it is not sufficient for the plaintiff to prove delay, and also a damage, when it appears from his proofs that there was other delay not chargeable to the defendant; but some damage must be traced to the delay for which the defendant was in fault.

When unexpected difficulties occur in the transportation of property by a carrier, and the consignor agrees, in view of them, to pay a sum for the carriage, in addition to what had been previously fixed upon, and pays the same, he cannot recover it back as paid without consideration.

Error to Lapeer. Submitted April 9. Decided June 11.

ASSUMPSIT. Defendant brings error.

*J. B. Moore* and *G. V. N. Lothrop* for plaintiff in error, as to the carrier's freedom·from obligation to do more than deliver goods at the destination marked on them, unless there are special directions, cited *Wibert v. N. Y. & Erie R. R.* 12 N. Y. 245; *Nutting v. Conn. R. R. R.* 1 Gray 502; *Jenneson v. C. & A. R. R.* 4 Am. L. Reg. 234.

*W. W. & M. N. Stickney* and *Wm. T. Mitchell* for defendant in error.

COOLEY, J.   In this action McKenzie recovered dam-

43 MICH.—77.

| 43 | 609 |
|----|-----|
| 67 | 117 |
| 43 | 609 |
| 80 | 100 |
| 43 | 609 |
| ,101 | 266 |
| 43 | 609 |
| 108 | 578 |
| 43 | 609 |
| d149 | 78 |

ages of the railroad company in respect to three several consignments of spars or masts, transported for him over its road. Different questions arise upon the record in respect to each of them, and they will therefore be considered separately.

I. The first consignment was of 12 cars of masts or spars from Fish Lake station, for which receipts were given of the following form:

"Detroit & Bay City Railroad Company. Fish Lake Station, August 12, 1873. Received from Jas. McKenzie in apparent good order two cars spars, 4612, 6206, marked Jas. McKenzie, Yarmouth Junction, Maine. Rate paid per car, Fish Lake to Port Huron, $22 per car. Marked and described as above; contents and value otherwise unknown; for transportation by the Detroit & Bay City Railroad Company to their warehouse at ———.

*Notice.* See rules of transportation on back hereof.
[Signed]                                J. KERN, *Agent.*"

Among the rules endorsed on the back was the following:

· "Goods or property consigned to any place off the company's line of road, or to any point or place beyond its terminus, will be sent forward by a carrier or freightman, when there is such, in the usual manner, the company acting for the purpose of delivery to such carrier as the agents of the consignor or consignee, and not as carriers. This company will not be responsible for any loss or damage to the property after the same shall have been sent from any warehouse or station of the company."

It is alleged by McKenzie in the first count of his declaration that the railroad company undertook to transport these twelve cars of masts or spars from Fish Lake station to Port Huron for the price of $22 per car, but that on their arrival at Port Huron the company demanded and exacted $45 per car. The questions that arise on this count are, *first*, whether the contract of the company was a contract to carry to Port Huron; and *second*, whether there is evidence that the company exacted and received the excessive charges.

Port Huron is not a station on the Detroit & Bay City Railroad, but is the connecting point of the Port Huron & Chicago with the Grand Trunk Railway. The

Port Huron & Chicago Railway crosses the Detroit & Bay City Railroad at Lapeer, and the line of transportation for these cars would be by the Detroit & Bay City road to Lapeer, and by the Port Huron & Chicago road to Port Huron. The defendant contended in the court below that its obligation was only to transport the cars over its own road and deliver them to the connecting road at the point of intersection, and that consequently the undertaking of the defendant was incorrectly set out in the declaration. This is probably true. *Gass v. New York etc. R. R. Co.* 99 Mass. 220; *Schneider v. Evans* 25 Wis. 241; *Cincinnati etc. R. R. Co. v. Pontius* 19 Ohio St. 221. But this is an immaterial variance. The gist of the action is that the defendant undertook that the price for the carriage should be a certain sum, but that when the carriage was completed a larger sum was exacted. It is of no importance that the declaration fails to state that the carriage for a portion of the distance was to be by a connecting road, or that it alleges something different.

The evidence of the payment of the excessive charge is that of the agent of the Grand Trunk Railway at Port Huron, that he paid $505 as freight charges to that point, by giving credit on the books of his company to the Port Huron & Chicago Railroad Company in the usual course. This, in connection with evidence that defendant made the Port Huron & Chicago Railroad Company its agent for the purpose of collecting and receiving its charges when property was sent subject to them was sufficient. The plaintiff had a right to look to the defendant for the whole excess, whether received by itself or by another company. *Schneider v. Evans* 25 Wis. 241.

II. The second consignment was of large masts which the plaintiff claims were to be carried from Lapeer to Detroit over the road of the defendant for $300, but for the carriage of which the defendant demanded and received $700. He also alleges "that the defendant did not nor would deliver said spars or masts at Detroit aforesaid in a reasonable time after so undertaking to do so; but so

negligently and wrongfully delayed the transportation and delivery of the same that said plaintiff lost the sale of the same."

These masts, it appears, were to be and were delivered by defendant to the Canada Southern Railroad Company to be transported to the seaboard in Maine. If defendant agreed to transport them over its road for $300, there is no evidence in the record that any larger sum was ever paid to or received for it. There was serious difficulty in the transportation; some breaking down of cars and some reloading; and the superintendent of the road testified that plaintiff agreed to pay $500, besides certain charges for assistance and repairs; and it might be inferred that all of these were included in back charges afterwards paid to the Canada Southern by a company receiving the masts at Buffalo. But this would be inferred only from the fact that it is testified that the payment was agreed upon by the plaintiff; and if it was he is entitled to have none of it refunded. *Moore v. Detroit Locomotive Works* 14 Mich. 266.

That the transportation of the masts from Lapeer to Detroit was seriously delayed appears in the evidence, and the causes are stated. But there is no showing that plaintiff lost a sale in consequence, or indeed that he had ever negotiated a sale. Some witnesses testify to a depreciation in the market value of such timber between the time when the masts should have been received at the seaboard if they had gone through without delay, and the time when they actually arrived there; but the plaintiff's evidence clearly showed that there was considerable delay not at all attributable to the defendant, and it is consistent with the whole record that if there had been no other delays, that which occurred between Lapeer and Detroit would have caused no loss. The plaintiff therefore made out no cause of action in respect to this part of his case.

III. The third consignment was of masts to be taken for a short distance on the road of defendant to its junction

with the Port Huron and Chicago road. For the transportation of these the plaintiff claims to have made special terms with one Fell, a local agent of defendant, at three dollars a car. Ten cars were moved, and $30 paid for the service, but when the fact came to the knowledge of the superintendent, he repudiated this arrangement, denied the authority of Fell to make it, and exacted $15 a car for the ten before moved, and for such as were moved thereafter. The only question on this part of the case is, whether Fell was vested with the authority he assumed to exercise, or whether the circumstances were such as to justify the plaintiff in dealing with him on the assumption that he possessed it.

Unfortunately the record presents somewhat blindly the facts which bear upon this question, and the members of this court do not agree in their construction of them. It would not prove useful to attempt an expression of our views under such circumstances, and as the case must go back for a new trial, this branch of the case will not be referred to further at this time.

The judgment is reversed for the error above pointed out, and the plaintiff in error will recover costs in this court.

The other Justices concurred.