MT. PLEASANT MANUFACTURING COMPANY v. THE CAPE FEAR AND YADKIN VALLEY RAILROAD COMPANY.

*Common   Carriers — Connecting   Lines — Liability   for   Overcharge — Evidence.*

1. An action lies, after payment, to recover back an overcharge by a common carrier.

2. When freight is shipped over connecting lines, no action lies against the last carrier to recover back a charge in excess of rate agreed upon by first carrier in the absence of proof that the first carrier, who gave the bill of lading, had authority to bind the connecting lines by its contract rate of shipment, or that the last carrier agreed to refund the sum paid in excess of the amount agreed by first shipper to be charged.

3. Where, in such action against the last carrier, it was in evidence that the agent of such carrier at the point of destination stated to the consignee that he would not let consignee have the freight without payment of a certain sum (which was largely in excess of the rate specified in the bill of lading), but if, after an investigation made with the roads over which the car came, there was an overcharge, it would be refunded; that he would try to get it corrected, as there was evidently an overcharge from the bill of lading, but it would have to go through all the roads over which it came; and also wrote letters to the consignee, stating in one that "the overcharge has been filed and should come in next

month. In cases of overcharge, the railroad does not allow goods taken without full amount being paid, and when overcharge is worked up by all the roads, the G. C. agent will remit same back." And in another: " Enclosed will find message I received from G. F. A., Mr. Kyle. It seems we are unfortunate on overcharges. Hope this one will be adjusted now. I have done all that is possible or necessary on my part to do in presenting the case to the general freight agent." And there was also evidence that he had communicated assignee's claim to the general transportation agent: *Held*, that there was sufficient evidence to go to the jury that the defendant company assumed to refund the amount overcharged, if an investigation showed such overcharge to have been made, and the Court below erred in instructing the jury to find a verdict for defendant.

This was an action brought before a Justice of the Peace in Guilford County, and carried, by appeal, to the Superior Court, tried before *Graves, J.,* at December Term, 1889, of GUILFORD Superior Court.

The plaintiff sued to recover the sum of $100.86, overcharge for freight shipped from Philadelphia, Pa., to Liberty, N. C., and collected from the plaintiff by defendant. The facts sufficiently appear from the opinion. His Honor, upon the evidence, directed the jury to find the following issue for the defendant:

" Did defendant assume to pay the plaintiff the difference between $45.54 and $146.40? Answer, No."

Judgment was, thereupon, entered for the defendant, from which the plaintiff appealed.

*Mr. Charles M. Busbee,* for the plaintiff.
*Mr. J T. Morehead,* for the defendant.

CLARK, J.: When there is an overcharge by a common carrier, an action lies to recover it back after payment. It is well settled that where money is paid with a full knowledge of the facts and circumstances upon which it is demanded, or with the means of such knowledge, it cannot,

ordinarily, be recovered back. The party will not be permitted to allege his ignorance of the law, and it will be considered a voluntary payment. But an exception to this rule obtains when the payment has been made by compulsion. The parties here did not stand on equal terms. The plaintiff was compelled to pay the freight demanded or do without his machinery, probably at a great loss to his business. Not to allow a consignee, under these circumstances, to accept the goods, pay the freight and sue to recover back the overcharge would be to subject the consignee and shipper, in a majority of cases, to pay any freight demanded, as a lesser evil than the loss by the detention of the goods. The principle that one, whether shipper or consignee, who pays excessive rates, can recover back the excess, is settled by numerous cases, both in England and this country. It is sufficient to cite *West Virginia Transportation Co.* v. *Pattison*, 41 Ind., 312, in which the authorities are carefully collated and reviewed

In the present case, the first company, the Pennsylvania Railroad Company, gave a bill of lading for the goods "marked Mt. Pleasant Mfg. Co., Liberty, N. C., to be transported and delivered at the regular freight station of the company at _____ to via W. S. P. & Norfolk Railroad, upon the following rates (naming the charge per 100 lbs.), making through rate $45.54 per car." There was one car-load. On its arrival at Liberty, N. C., the defendant demanded and received $146.40, which plaintiff paid, as the defendant refused otherwise to let him have the machinery, and brings this action to recover back the $100.86 overcharge. It was in evidence that the way-bill which accompanied the goods, and which passed from company to company as the goods were transferred from one to another, contained a charge of $146.40 for freight. The bill of lading stipulated against any responsibility of the shipping company beyond its own

line. A case exactly in point is *Schneider* v. *Evans*, 25 Mich., 241. In this case, as in that, each of the companies acted independently. In that case, it is held, in a well considered opinion, that the remedy of the consignee for the charge paid, in excess of the agreed rate, is against the first company, as it had made the contract. It says: "It is more reasonable to impose on the owner who, knowing the custom, causes the goods to be delivered to the carriers without notifying them of his secret contract, the burden of resorting to the company with which he contracted, than to impose on the carriers the burden of ascertaining at their peril all the secret agreements between the shipper and prior carriers from whom the goods are received, affecting their right to receive the ordinary freights." On a rehearing of that case the authorities were carefully reviewed and the decision was affirmed.

In *Condict* v. *Grand Trunk Railway*, 4 Lans., 106, it is held that, in the absence of proof that the first company was authorized to bind the connecting lines by a contract to carry at a fixed price, such first company assumes the duty of having the goods carried the whole distance for the fixed price. Each of the other companies is responsible for the carriage over its own line and entitled to charge its regular rates. To same effect are *Little Rock and Fort Smith Railroad* v. *Daniels*, 32 Am. & Eng. Railroad Cases, 479, and *Detroit and Bay City Railroad Co.* v. *McKensie*, 43 Mich., 609. The opinion in the latter case is by Judge COOLEY, the President at the present time of the Inter-State Commerce Commission, and in it *Schneider* v. *Evans*, above cited, is referred to and affirmed.

There is no evidence that the rates exacted were in excess of those allowed by law. The plaintiff cannot, therefore, in the absence of some agreement by the defendant to refund, recover of it the sum paid in excess of what the Pennsylvania Railroad Company agreed to ship the goods for, the

remedy being to sue the Pennsylvaia Railroad Company on the contract. The only remaining question is whether there is any evidence tending to show that the defendant company assumed, or agreed to refund, any amount paid in excess of the agreement of the Pennsylvania Railroad Company. The Judge below told the jury that there was not, and instructed them to return a verdict for defendant. To that charge the plaintiff excepted.

A witness for the plaintiff testified, without exception, that he applied for plaintiff to Glosson, the agent of the defendant at Liberty, for the machinery, who stated that he would not let plaintiffs have it without paying the $146.40, but if, after an investigation made with the roads over which the car came, there was an overcharge, it would be corrected and the overcharge refunded; and that he would try to get the overcharge corrected, and he would do all he could to have it refunded, as there was evidently an overcharge from the bill of lading; that Glosson said "if there was an overcharge it would be refunded, but it would have to go through all the roads over which it came." There was also in evidence two letters from Glosson to plaintiff, in one of which he says: "The overcharge on car machinery has been filed and should come in next month. In cases of an overcharge the railroad does not allow goods taken without full amount being paid, and when overcharge is worked up by all the roads, the G. F. Agent will remit same back." In the other, he says: "Enclosed will find a message I received from G. F. A., Mr. Kyle. It seems we are unfortunate on overcharges. Hope this one will be adjusted soon. I have done all that is possible or necessary on my part to do, in presenting the case to the General Freight Agent." There was also in evidence a letter from Glosson to Mr. Rose, the General Transportation Agent of the defendant company, communicating plaintiff's claim for an overcharge.

The bill of lading fixing the through rate at $45.54 is uncontradicted, and is evidence of the charge agreed upon between the shipping company and the plaintiff.   While, in the absence of evidence that the shipping company was authorized by the other companies to agree for them upon that rate, and in the absence of evidence that they took the freight with knowledge that such rate had been agreed on, and thereby ratified it, such other companies would be entitled to charge their regular rates, still, there was, we think, evidence sufficient to go to the jury that the local agent of the defendant company communicated with the general agents, and that the defendant company assumed that it would refund the amount overcharged, should it prove, on investigation, that there was such overcharge as claimed by the plaintiff.   The only overcharge claimed by him, was that the sum paid was in excess of that agreed on by the bill of lading, and there is evidence tending to show that defendant, after investigation, admitted the correctness of such claim.   The question should have been submitted to a jury.

*Venire de novo.*