## PENNSYLVANIA COMPANY *v.* DICKSON.

[No. 4,405.   Filed May 26, 1903.   Motion to modify opinion overruled October 13, 1903.]

CARRIERS.—*Shipment of Stock.—Delay.—Damages.—Railroads.*—Averments in a complaint against a carrier for damages for failing to deliver cattle shipped in time for a certain market, that the carrier knew and understood that the cattle were shipped for a certain market, and knew the time of the opening of the market and the manner of preparing cattle for sale thereat, and that if the cattle had been shipped with reasonable dispatch they could have been delivered in time for such market, render the complaint good, although the bill of lading expressly stipulates that the carrier did not contract to ship the cattle by any particular train or deliver them for any particular market. *pp. 452–456.*

SAME.—*Shipment of Stock.—Contract.—Connecting Lines.—Railroads.*—An instruction in the trial of an action against a railroad company for damages to cattle caused by delay in shipment, that the connecting carrier was the agent of the initial carrier in forwarding the stock, and that the initial carrier was liable for its acts, including delays, was erroneous, where the contract of shipment stated that the stock was received for transportation from place of delivery "to destination, if on the said carrier's line of railroad, otherwise to the place where said live stock is to be received

by the connecting carriers for transportation to or toward des-
tination, and that the same has been received by said carrier for
itself and on behalf of connecting carriers for transportation,''
and the evidence showed that the initial carrier did not own or
operate a line of road to the place of destination, but delivered
the stock to a connecting carrier on whose line the delay occurred.
*pp. 456–459.*

From Morgan Circuit Court; *M. H. Parks,* Judge.

Action by Katharine Dickson against the Pennsyl-
vania Company. From a judgment for plaintiff, defend-
ant appeals. *Reversed.*

*S. O. Pickens,* for appellant.
*C. G. Renner* and *J. C. McNutt,* for appellee.

WILEY, J.—Appellee was plaintiff below, and sued ap-
pellant to recover damages for the alleged negligent fail-
ure to carry and deliver at the Union Stock-Yards, in Chi-
cago, five car loads of cattle in time for a particular market
on a specified day.

The complaint was in two paragraphs. The first is
based upon a written contract for the shipment of four
car loads of cattle from Mooresville, Indiana, and the sec-
ond is based upon a contract for the shipment of one car
load of cattle from Martinsville, Indiana. Both of these
contracts are made exhibits. The first may be designated
as a "live stock contract" and the second as a "bill of
lading." The negligence complained of was the failure
to ship and deliver the stock in time for the market of
December 28, 1898; the appellant having received the
stock on the 27th. The "live stock contract" contains the
following stipulations: That "the said shipper has de-
livered to the said carrier live stock of the kind and num-
ber, and consigned and destined by said shipper as fol-
lows: Seventy-eight cattle, four cars cattle M. Dickson &
Co., Cr. J. C. Bohart Com. Co., Union Stock-Yards, Chi-
cago, Illinois, for transportation from Mooresville, Indi-
ana, to destination, if on the said carrier's line of railroad,

otherwise to the place where said live stock is to be received by the connecting carriers for transportation to or toward destination; * * * that said shipper, or the consignee, is to pay freight thereon to the said carrier at the rate of eleven cents per 100 pounds, which is the lower published tariff rate based upon the express condition * * * that in the event of any injury, delay, or detention of said live stock, caused by the negligence of said carrier, or its employes, or its connecting carriers, or their employes, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby the amount actually expended by said shipper, in the purchase of food and water for the said stock, while so detained." The bill of lading, which is the exhibit to the second paragraph, shows the receipt of one car load of cattle, "which said company agrees to carry to the said destination, if on its road, otherwise to deliver to another carrier on the route to said destination." Subdivision two of the bill of lading is as follows: "No carrier is bound to carry said property by any particular train or vessel, or in time for any particular market, or otherwise than with as reasonable dispatch as its general business will permit. Every carrier shall have the right, in case of necessity, to forward said property by any railroad or route between the point of shipment and the point to which the rate is given." It is also provided in subdivision three, that "no carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee."

The record shows that Martinsville and Mooresville are situate on the Indianapolis & Vincennes Railroad, which is operated by appellant, and that it terminates at the Panhandle yards at Indianapolis. It is also shown that the appellant did not own or operate a line of road from Indianapolis to Chicago, and that freight shipped from

points on the line of the Indianapolis & Vincennes Railroad was routed over some other line from Indianapolis, and that in this instance the five car loads of cattle were delivered to the Panhandle company's fast train for Chicago at Indianapolis. Each paragraph of the complaint avers that appellant's train was overloaded, which was the cause of delay. It is also shown by express averments that, when the cattle were loaded, appellee knew the train was late. Each paragraph also contained the following allegations: "That it was known and understood by said company [appellant] that said cattle were to be delivered to the consignee aforesaid in the forenoon of the 28th day of December, 1898, so that they could have food and water, and be prepared for the opening of the market at said Union Stock-Yards on said day, at 9 o'clock a. m.; that said company [appellant] well knew the custom of preparing cattle for said market, and the time of the opening thereof, and all things hereinafter alleged concerning the same, and in executing said written contract, and in entering into said writing, contracted with special reference thereto;  *  *  *  that said cattle were in good condition, so that had they been transported with reasonable dispatch and ordinary care by said company [appellant], they would have arrived at said Union Stock-Yards in good condition, without loss of weight or decrease of value, in time to be prepared and exposed for sale at the opening of said market on the 28th day of December, 1898;  *  *  *  that said company [appellant] carelessly and negligently failed and neglected to take her said cattle from said town of Mooresville at the usual time, and at the time it agreed to, but carelessly and negligently left said cattle on said side-track at Mooresville five hours past the time she was assured her said cattle would be taken;  *  *  *  that after said engine and said cars of said defendant were under way from said town of Mooresville with said cattle, it did not, with ordinary care, reason-

able dispatch, and fidelity to its duty as a common carrier, transport said live stock of plaintiff, but carelessly and negligently failed to provide sufficient engines to transport said train and said cattle with reasonable dispatch to their destination." The damages to appellee are alleged to have been occasioned in the following manner: By a decline in the market from December 28 to the following day; shrinkage in the cattle, and in additional expense in having to keep them over. A demurrer to each paragraph of the complaint was overruled. Answer in denial, trial by jury, verdict and judgment for appellee. Appellant's motion for a new trial was overruled. Overruling the demurrer to the complaint and the motion for a new trial are assigned as errors.

It is urged that the first paragraph of the complaint is bad, because it is averred that the appellant failed to transport the cattle in time for a certain market, when the contract sued on is not a contract to transport them in time for that or any particular market, but only to transport them within a reasonable time, if on appellant's line of road, and, if not, to deliver them to a connecting carrier. The same objection is made to the second paragraph, on the ground that the bill of lading expressly stipulates that the appellant did not contract to ship the cattle by any particular train, or deliver them at their destination for any particular market. In each paragraph it is averred that appellant knew and understood that the appellee was shipping the cattle for the market in the forenoon of December 28, and that appellant knew the time of the opening of the market, and the manner of preparing cattle for sale thereat; also, that if the cattle had been shipped with reasonable dispatch, there was abundant time between the time they were delivered at the shipping-points for their delivery at Chicago for the market on the morning of the 28th of December. Counsel for appellant insist that these allegations are at variance

with the written contracts, and that all oral contracts were merged therein. These averments to which we have just referred, make both paragraphs of the complaint good under the rule declared in *Cleveland, etc., R. Co.* v. *Heath,* 22 Ind. App. 47.

By its motion for a new trial appellant attacks the action of the trial court in giving and refusing to give certain instructions, in modifying, and giving as modified, an instruction tendered by it, and in admitting certain evidence.

Upon request of appellee the court gave the following instruction: "In case of a through contract by a railroad company to carry live stock from a shipping point on its line to a point on a connecting line, the subsequent carrier becomes merely the agent of the first or initial carrier for the completion of the contract, and for any loss or damages occurring on the connecting line the initial line is liable as a principal for the acts of an agent. Therefore if you find from a preponderance of the evidence in this case that the defendant received and accepted the four cars of cattle set out in the first paragraph of the complaint, and the one car set out and mentioned in the second paragraph of the complaint, or either lot of said cattle, from the plaintiff, and contracted to carry said cattle and deliver the same at the Union Stock-Yards, in the city of Chicago, Illinois, as in said complaint alleged, then I instruct you that it was the duty of the defendant to carry said live stock to its destination without delay; and the fact, if you should find such to be a fact, that the delay in said live stock reaching its destination until about 5 o'clock on December 28, 1898, occurred while on some connecting line, over which said cattle were carried, would not release the defendant from liability for damages resulting from such delay, but the defendant would be answerable, as a principal, for such damages to the plaintiff as the unreasonable delay occasioned, if you find it was an unreasonable delay, and your verdict should be in favor of

the plaintiff." If the contracts under which the cattle were shipped imposed upon appellant the duty of carrying them to their destination, i. e., if they were what is recognized in law as "through contracts," then the instruction is not subject to the objections urged against it. The character of the contracts must be determined by their provisions. In the contract for the shipment of the four cars of cattle it is shown that they were delivered to appellant "for transportation from Mooresville, Indiana, to destination, if on the said carrier's line of railroad, otherwise to the place where said live stock is to be received by the connecting carriers for transportation to or toward destination, and that the same has been received by said carrier for itself and on behalf of connecting carriers for transportation." The bill of lading for the shipment of one car of cattle from Martinsville to Chicago shows the receipt of the cattle by appellant, and contains this provision: "Which said company agrees to carry to the said destination, if on its road, otherwise to deliver to another carrier on the route to said destination." The language used in both contracts is clear and unambiguous, and its meaning can not be misunderstood. The acceptance of goods marked to a point beyond the carrier's limit, and the payment of a through rate, is not *prima facie* evidence of a contract to deliver the goods at their final destination, but simply binds the carrier to deliver to the next connecting carrier. Ray, Neg. of Imposed Duties (Freight), §100; *Illinois Cent. R. Co.* v. *Kerr,* 68 Miss. 14, 8 South. 330; *Aetna Ins. Co.* v. *Wheeler,* 49 N. Y. 616; *Hill* v. *Burlington, etc., R. Co.,* 60 Iowa 197, 14 N. W. 249.

The general doctrine as to transportation by connecting lines, recognized by the Supreme Court of the United States, and also a majority of the state courts, is that each road, confining itself to its common law liability, is only bound, in the absence of a special contract, safely to carry over its own road and safely transfer to the next connect-

ing carrier. Ray, Neg. of Imposed Duties (Freight), §95 at p. 370. In note four to the above text are collected and cited many authorities in support of the proposition. See, also, Hutchinson, Carriers (2d ed.), §§149, 149a, 149b.

In *Myrick* v. *Michigan Cent. R. Co.,* 107 U. S. 102, 27 L. Ed. 325, the rule is declared to be that, in the absence of a special contract, a railroad company, by receiving cattle for transportation over its own line, and other lines therewith connected, is only bound to carry the cattle over its own line, and deliver them safely to the next connecting carrier. In the same case it was also held that the receipt of the stock by the initial carrier does not of itself constitute a through contract.

In Massachusetts it is held that a railroad company receiving goods directed to a point beyond the end of its route is not responsible for its connecting carrier, unless it makes a positive agreement extending its liability. *Burroughs* v. *Norwich, etc., R. Co.,* 100 Mass. 26, 1 Am. Rep. 78.

The case of *McEacheran* v. *Michigan Cent. R. Co.,* 101 Mich. 264, 59 N. W. 612, is directly in point here, for the reason that the bill of lading contained provisions identical to those before us. The bill of lading showed the receipt of two carloads of lumber to be shipped from Essex Center, Michigan, to New York, and contained this provision: "If upon said company's line of railroad; otherwise to the place where the property is to be received by the connecting carrier." It was held that, though the initial carrier gave the shipper a through rate for freight, it could not be held liable as a carrier beyond its own line. See, also, *Detroit, etc., R. Co.* v. *McKenzie,* 43 Mich. 609, 5 N. W. 1031; *Rickerson, etc., Mill Co.* v. *Grand Rapids, etc., R. Co.,* 67 Mich. 110, 34 N. W. 269; *Alabama, etc., R. Co.* v. *Thomas,* 83 Ala. 343, 3 South. 802; 6 Am. & Eng. Ency. Law (2d ed.), 639.

Our own courts have adhered to the rule that in the

absence of a special contract, the receipt of goods by a common carrier, to be transported beyond its line, has discharged its full measure of duty when it has delivered them safely to its common carrier, to be forwarded to the point of destination. *Lake Erie, etc., R. Co.* v. *Condon,* 10 Ind. App. 536; *United States Ex. Co.* v. *Rush,* 24 Ind. 403. The instruction under consideration is not in harmony with the great weight of authorities in the United States.

The fact is undisputed that appellant's line of railroad terminated at Indianapolis, and that it did not own or operate a line of railroad between Indianapolis and Chicago. It appears in evidence, uncontradicted, that it delivered the cattle at Indianapolis to a connecting carrier. By its contracts it only agreed to transport the cattle to the end of its line.

The instruction expressly charges that the connecting carrier was the agent of appellant in forwarding the cattle, and that appellant was liable for its acts, including delays, etc. This was misleading, and not applicable to the undisputed facts.

Counsel for appellee have not presented any argument in support of this instruction, but content themselves by saying that what they said in reference to the sufficiency of the complaint applies with equal force to the instructions. There is a marked difference between the law questions arising under the demurrers to the complaint and that presented by the instruction.

Counsel for appellant has discussed other instructions, and also admission of certain evidence; but as the law applicable to the facts disclosed by the record is stated in what we have said in discussing the above instruction and must control in a subsequent trial, it is not necessary to decide other questions.

Judgment is reversed, and the trial court is directed to sustain appellant's motion for a new trial.