GOEHREND *v.* PERE MARQUETTE RAILROAD CO.

1. APPEAL AND ERROR — ACTION AGAINST CARRIER — REVIEW — THEORY BELOW.

Where, in an action against a carrier for delay in transporting live stock, the declaration counts neither upon a breach of duty to deliver to a proper connecting carrier, nor upon the responsibility of defendant for the acts or omissions of a connecting carrier, such questions are not open for review on error.

2. CARRIERS — LIVE STOCK — DELAY IN TRANSPORTING — CONNECTING CARRIER—LIABILITY OF INITIAL CARRIER.

In an action against a railroad company for delay in transporting live stock, evidence examined, and *held,* insufficient to show that the railroad upon which the delay occurred was not a connecting carrier responsible alone for the acts of its servants and for the service which it gave to shippers of freight.

Error to Osceola; Rose, J. Submitted October 11, 1906. (Docket No. 64.) Decided December 3, 1906.

Case by August C. Goehrend and Edwin Wood against

the Pere Marquette Railroad Company for failure to properly transport certain live stock.   There was judgment for defendant on a verdict directed by the court, and plaintiffs bring error.   Affirmed.

The declaration contains two counts.   In the first it is alleged:   That defendant was engaged in operating a railroad from Reed City to Port Huron, in this State, and was engaged in transporting freight over and along said route for hire, and in delivering the same, whenever necessary, to connecting carriers.   That plaintiffs delivered to defendant certain live stock which it undertook and agreed to transport, by itself and by connecting carriers, with reasonable safety and dispatch, to East Buffalo, in the State of New York.   That defendant's duty in the premises was not performed, in that it carelessly and negligently failed and neglected to transport said animals to their said destination in as expeditious a manner as it might and should have done, failed and neglected to transport them within the time that it usually conveyed like freight, negligently permitted the animals to be delayed, in an unusual and unreasonable manner, for an unreasonable period of time, at divers places along said route, failed and neglected to feed and water said animals in transit or to provide a place and opportunity for plaintiffs to feed and water them, by reason of all of which plaintiffs were damaged.   The second count, referring to the conditions and circumstances stated in the first count, alleges negligent delay in transportation of the animals and breach of the duty imposed upon railroad companies by section 11742, 3 Comp. Laws, with resulting damage to the plaintiffs.   The plea was the general issue.

The cause coming on to be tried, one of the plaintiffs, the only witness sworn, gave testimony tending to prove that the animals were carried by defendant to Sarnia, in Canada, and the car there delivered to the Lake Erie & Detroit River Railroad Company, which transported it to St. Thomas, from which point it was taken via the Michi-

gan Central Railroad to its destination.   That the delays and other breaches of alleged duty complained about occurred after the car had been delivered at Sarnia.   That plaintiffs had for many years been shipping live stock from Reed City to East Buffalo; by defendant's road to Port Huron or Sarnia, thence, by the Grand Trunk Railway, to destination, and that shipments had never been, in the way bills, or bills of lading, routed.   That shortly before the shipment in question was made, defendant's station agent at Reed City stated that the Pere Marquette had acquired control of the Lake Erie & Detroit River Railroad, and asked witness to ship by that route.   Witness declined to do so.   That one shipment intervened this conversation and the shipment in question.   Whether this intervening shipment went by way of the Grand Trunk, witness could not positively state, but his recollection was that it did.   That no conversation took place concerning the route of the last shipment, but the plaintiff, who accompanied the cattle, knew when the train reached Saginaw that defendant did not intend to deliver the car to the Grand Trunk Railway Company.   An offer to prove that upon the return of the witness to Reed City he had a further conversation with the local agent of defendant, and with its traveling freight agent, in which witness was solicited to ship by the Lake Erie & Detroit River Railroad, and was told that defendant then had its own line to East Buffalo, was excluded.   There was some other evidence received, and some which was excluded, tending to show that witness heard and observed things indicating to him that the defendant operated or controlled the Lake Erie & Detroit River Railroad.   The contract was in terms:

"'For transportation from Reed City to destination, if on the said carrier's line of railroad, otherwise to the place where the said live stock is to be received by the connecting carriers for transportation to or toward destination."

No connecting line was named.   Upon the back of the bill of lading was the following:

"The company does not agree to transport live stock by any particular train, within any specified time, nor in time for any particular market, and agents must not give receipts containing such guarantee. Neither will the company be responsible for any loss or damage occurring by the refusal, failure or inability of a connecting line to receive and forward the stock after tender of delivery."

The trial judge, at the conclusion of plaintiff's testimony, directed a verdict for the defendant.

*Charles A. Withey*, for appellants.

*Stevens, McPherson & Bills*, for appellee.

OSTRANDER, J. (*after stating the facts*). It is argued for appellants that (1) defendant was shown to be in control of the Lake Erie & Detroit River Railroad—that said road was a part of its own line; (2) no routing appearing on the bill of lading, and no notice of any change having been given to plaintiffs, the course of dealing of the parties supplied whatever was necessary to establish the route, and the contract therefore was to forward the shipment as others had been customarily forwarded, by way of the Grand Trunk Railway; (3) no particular route having been specified, it was defendant's duty, in any event, to forward by a reasonably direct and properly furnished route.

The pleadings and the terms of the contract of shipment limit the discussion to the first of these propositions. No other appears to have been presented to or considered by the trial court. It is clear that the declaration counts neither upon a breach of duty to deliver to a proper connecting carrier, nor upon the responsibility of defendant for the acts or omissions of a connecting carrier. If there was competent evidence tending to prove that the injuries complained about occurred on the line of defendant's railroad, the case should have been submitted to the jury. The evidence pointed out is the conversation with the station agent before the shipment, the fact that the Pere Marquette and the Lake Erie & Detroit River Railroad

companies occupied the same offices at Sarnia, the conversation, after the shipment, with the station agent and the traveling freight agent of defendant, the fact that defendant, through its station agent, afterwards refused plaintiffs' cars to be run over the Grand Trunk Railway to East Buffalo, giving as a reason that they wanted stock shipped over their own road, and the fact that, disregarding the custom and the known wishes of plaintiffs, and without notice to them, the particular shipment was routed over the Lake Erie & Detroit River Railroad, which was 80 miles longer, and not furnished with conveniences for unloading and feeding and watering stock. The statements of the defendant's station agent, made prior to the shipment, were detailed by the witness as follows:

" Mr. Tobias informed me that the Pere Marquette Railroad Company had acquired control of the Lake Erie & Detroit River Railroad, I think that is the correct title of it, to St. Thomas, and had running rights over the Michigan Central to destination at East Buffalo; and that the officials wanted the stock shipped over their own line, over their own road, and I told him I didn't think I could go around that way because it was a good deal farther and I couldn't take the time, and couldn't get there as quick as I could over the Grand Trunk, and that is the way the matter was left. I told him that I didn't want it to go over the new line when I didn't know I could make connections. This conversation was not more than a week or two before this shipment was made."

The offer made to prove statements subsequent to the shipment was:

"We want to show that the local agent at Reed City, Mr. Tobias, and a traveling freight agent or soliciting agent for freight shipments for defendant railroad at that time personally solicited [plaintiff] to make his live stock shipments by the road he has named, from Port Huron in, and said the defendant now had its own line to Buffalo. We offer it for the purpose of showing that the defendant railroad had control of that line. We simply claim it is corroborative, that is all."

I think it is not clear that a prima facie case might not have been made for plaintiffs by proof of the contract of carriage, the injuries and the damage, leaving defendant to show, if it could, that the injuries did not occur upon its line of railroad. The car was not routed, no connecting carrier was named, and the undertaking was to deliver at destination (East Buffalo), if on defendant's line of railroad. No such rule is, however, asserted, and if it were, the reply might be well made that the case made for plaintiffs goes too far to permit its application. The declaration, inferentially, negatives the fact that defendant's line of railroad extended beyond Port Huron. The evidence establishes the fact for this case that the same form of contract had long been in use between the parties, and both had understood, and plaintiff asserts that in the instant case he understood, that a connecting carrier would intervene at Port Huron. Whether the defendant would be bound by a contract made by its agent which expressly or by necessary implication excluded the idea of a connecting carrier, or named one at St. Thomas, or at some other point, is not the question presented. In the light of the facts, it cannot be said that the agent of defendant, who made the contract, asserted, in and by the contract, that his principal owned or operated the Lake Erie & Detroit River Railroad. Nor for the same reason is defendant estopped to deny the fact of such ownership or control. Even when plaintiffs received information at Saginaw that it was intended that the car should not go forward by way of the Grand Trunk Railway, and had, as we must assume from the testimony, the opportunity and right to change the intended route, the reason given for not making the change is that the yardmaster of the Lake Erie & Detroit River Railroad Company at Sarnia said they would get them there (to destination) "just as quick." It is not claimed that at this point plaintiffs (one of whom was in charge of the shipment) were doing more or less than dealing with a connecting carrier, although not with the usual one. Fairly stated, the case for plaintiffs is that for 15 years defendant's line of

railroad went no farther than Port Huron, that it had been recently, and just prior to the shipment in question, extended beyond Port Huron and towards, if not to, East Buffalo; and it is attempted to prove the fact of the extension and consequent liability for the injuries occurring beyond Port Huron on the route which was followed. No presumptions aid plaintiffs, since the diverting of traffic to one rather than to another connecting line may be reasonably accounted for otherwise than by the theory that the initial carrier owns or controls the road which is preferred. The right of the initial carrier to deliver to a connecting carrier of its choice, in the absence of directions from the shipper and of contract routing, is admitted. In the last analysis, therefore, the evidence of the fact attempted to be proved is to be found alone in the statements made by the agents of defendant. We are referred to no authority for the proposition that under the circumstances here disclosed the statements of the agent of a carrier may be received to establish, against the denial of the principal, the facts stated. But we need not, as we might, rest the case upon this ground alone. Assuming the facts stated by the agents to be true, they fail to prove that the Lake Erie & Detroit River Railroad Company was not a connecting carrier responsible alone for the acts of its servants, and for the service which it gave to shippers of freight.

The judgment is affirmed.

GRANT, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.