## L. STARKS CO. *v.* MANISTEE & NORTHEASTERN RAILROAD CO.

CARRIERS—FREIGHT—NEGLIGENCE—DELAY — DIRECTING VERDICT.
   A carrier which receives a car of potatoes to be shipped over two other connecting lines, with directions to notify a person named of arrival, but neglects to advise the connecting carriers of the directions to give such notice, does not become an insurer of the freight, but is liable for the loss which occurs after the time when notice ought to have been given, and in the absence of evidence separating such damage from other depreciation caused by the delay of the car on the lines of the connecting roads, a verdict of six cents was properly directed.

Error to Kent; McDonald, J.   Submitted February 17, 1911.   (Docket No. 140.)   Decided May 8, 1911.

Assumpsit by the L. Starks Company against the Manistee & Northeastern Railroad Company on a contract of shipment.   A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error.   Affirmed.

*Smedley, Hall & Gillard,* for appellant.

*Wilson, Wilson & Rice,* for appellee.

BLAIR, J.  This is an action of assumpsit to recover damages for breach of a contract for the transportation of a car load of potatoes, consigned to the plaintiff, via Grand Trunk Railroad Company, at Gratiot Siding, Detroit, with instructions to notify Frank Wise, on the arrival of the car at its destination.  Wise had ordered the potatoes at 49 cents a bushel, subject to inspection.  The potatoes were received by defendant September 18, 1905, and delivered to the Pere Marquette Railroad Company September 19th, at Kaleva, a junction point, where there was an agent representing both companies.  In transferring the car to the Pere Marquette, the agent omitted from the shipping bill the words, "Notify Frank Wise."  The car arrived at Grand Rapids September 21st, was delivered to the Grand Trunk on September 26th, reached Detroit September 27th, and was placed on the Gratiot Siding on Saturday, September 30th.  No notice was given to Wise, who did not learn of the arrival of the car until October 3d, when he inspected the potatoes, found them badly decayed, and refused to accept them.

The testimony tended to show that in case of new potatoes in a box car, decay would begin to set in when the temperature of the car went above 80 degrees Fahrenheit.

"* * * That potatoes in the fall of the year came more or less green, and do not keep like winter potatoes. * * * In some cases, in a hot car, they will not last over seven or eight days.  We have no trouble at that time of the year in shipping potatoes if they come prompt. * * * My question was whether it is a most dangerous time of the year to ship potatoes on account of the weather, and on account of the potatoes being new.

"*A.* Not if they are not kept too long; if we get them prompt and take them out of the cars.

"*Q.* Then you ought to get potatoes shipped at that time of the year, to have them arrive in good condition, within three or four days from the time they were shipped?

"*A.* Yes, sir.  Prompt shipment was the condition I gave in the matter; but it was general; no particular time fixed.  * * * That when a temperature of 80 degress is reached the potatoes will tend toward decompo-

sition and decay. How long after 80 degrees of temperature it is necessary to go until decomposition is well under way and cannot be checked, I would not be able to say. In a general way, I would say a day or two; but that I just do not know.

"*Q.* Now what would you say as to the effect of the temperature on potatoes when once decay had started?

"*A.* I cannot say specifically for potatoes. I presume that it is the same with decomposition of most all vegetable and animal matter, if it has started once.

"*Q.* What is that?

"*A.* If it starts, it is hard to stop.

"*Q.* The temperature has no effect?

"*A.* Generally none."

There was also testimony that the maximum temperature on the 18th was 75°; on the 19th 70°; on the 21st, at Grand Rapids, 74°; on the 26th, at Grand Rapids, 69°; on the 27th, at Detroit, 78°; 28th, 87°; 29th, 82°; 30th, 84°; October 1st, 73°; 2d, 70°; 3d, 74°.

The declaration contains, among other allegations, the following:

"That, upon the receipt of said car load of potatoes from the said plaintiff, and the delivery by said defendant to said plaintiff of the bill of lading heretofore mentioned, it then and there became and was the duty of said defendant to make out and prepare a waybill containing the same instructions as were written upon the original bill of lading, namely: 'Consignee, L. Starks Company, Gratiot siding, Detroit, Michigan. Notify Frank Wise'—and to deliver said way bill to its agent in charge of its train by which said car load of potatoes was transported from the station of Cedar aforesaid, to the said station of Kaleva, for the purpose and to the end that said waybill should be delivered to the connecting carrier at the station of Kaleva, and thereby instruct said connecting carrier of the manner in which said goods should be shipped, and of the disposition to be made of said goods upon their arrival at the destination. Yet the said defendant, not regarding its undertaking and promise and duty in that behalf, caused said waybill to be made out in a negligent and careless manner, and carelessly and negligently omitted from said waybill the words, 'Notify Frank Wise,' and negligently and carelessly delivered said waybill to the connecting

carrier at Kaleva, with the words 'Notify Frank Wise,' omitted therefrom.  That said goods were taken by the connecting carrier at Kaleva, namely, the Pere Marquette Railroad Company, and were carried by it over its line of railroad and later delivered to the Grand Trunk Railroad Company, and were by it placed upon the track at Gratiot siding, Detroit, Mich., for delivery, on the 30th day of September, 1905."

That by reason of the negligence of defendant, plaintiff suffered loss.

"And plaintiff avers that all of such loss and damage was occasioned solely by reason of the neglect and carelessness of said defendant to properly make out said waybill, and by omitting from said waybill, which was delivered to the connecting carrier, the words, 'Notify Frank Wise.'"

The circuit judge instructed the jury to return a verdict for defendant for the following reasons:

"The measure of damages would be the difference between the value of the goods at the time when Frank Wise should have been notified and the time when he was actually notified, which was on the 3d day of October, 1905. There is no evidence of any damage.  There is nothing that you could base a verdict upon, nothing that you could base a finding of damages upon for the plaintiff, if that is held to be the measure of damages, so that there is nothing for you to deliberate upon.  It becomes my duty to instruct you to return a verdict, and I will do that in accordance with the defendant's eighth request to charge. [Reading.]  There is no evidence in this case as to the amount of the injury to the potatoes which was due to the negligence of the defendant, and there is evidence in the case from which it would appear that the transportation of the potatoes was delayed both by the Pere Marquette Railroad Company and the Grand Trunk Railroad Company.  There is no evidence, therefore, before you, which will enable you to separate the injury due to the negligence of the defendant, if any, and if you find that the defendant was negligent (and that is admitted) your verdict must be for nominal damages, six cents.  The clerk may take your verdict."

Plaintiff brings the record to this court for review upon writ of error.

The contract contained a clause, whereby the defendant agreed—

"To carry to said destination, if on its road; otherwise to deliver to another carrier on the route to said destination. * * * No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignees."

If the usual rule which prevails in this State as to the liability of connecting carriers applies to this case, there can be no doubt of the correctness of the conclusion reached by the circuit court. *McMillan* v. *Railroad Co.*, 16 Mich. 79, 120 (93 Am. Dec. 208); *Detroit, etc., R. Co.* v. *McKenzie*, 43 Mich. 609 (5 N. W. 1031); *Rickerson Roller Mill* v. *Railroad Co.*, 67 Mich. 110 (34 N. W. 269); *Smith* v. *Express Co.*, 108 Mich. 572 (66 N. W. 479); *Modern Match Co.* v. *Railroad Co.*, 140 Mich. 570 (104 N. W. 19); *Rolfe* v. *Railway Co.*, 144 Mich. 169 (107 N. W. 899, 115 Am. St. Rep. 388); *Goehrend* v. *Railroad Co.*, 146 Mich. 497 (109 N. W. 849); *Reason* v. *Railway Co.*, 150 Mich. 50 (113 N. W. 596).

Plaintiff's counsel contend, however, that the usual rule does not apply, but that, by virtue of its negligence in omitting the instruction to notify Wise, defendant assumed the obligations of an insurer, and was responsible for the entire loss, citing in support of their contention: 4 Elliott on Railroads, § 1440; 2 Hutchinson on Carriers, § 611; 6 Cyc. pp. 485, 486; *Weaver* v. *Railway Co.*, 135 Mo. App. 210 (115 S. W. 500); *Little Miami Railroad Co.* v. *Washburn*, 22 Ohio St. 324; *St. Louis, etc., R. Co.* v. *Coolidge*, 73 Ark. 112 (83 S. W. 333, 67 L. R. A. 555, 108 Am. St. Rep. 21). See, also, *Merrick* v. *Webster*, 3 Mich. 268; *Hutchings* v. *Ladd*, 16 Mich. 493; *Dana* v. *Railroad Co.*, 50 How. Prac. (N. Y.) 428.

The authorities cited, in so far as they support plaintiff's contention, are opposed to the rule in this State as ex-

emplified by the cases hereinbefore cited, and relate to a diversion from a prescribed route. We have no doubt that where a carrier bills freight over a different route than that prescribed by the contract, and the property is damaged by the negligence of the carrier transporting it over the changed route, the first carrier would be liable for the entire damage. But we are not prepared to hold that, if in such a case the goods were safely transported over such changed route to their destination, the initial carrier would be responsible for the negligence of the last carrier. So in the instant case, if the car had been destroyed by fire after the time when, in the usual course of business, Wise would have received notice and removed his potatoes, but was not notified because of defendant's negligence, it might well be held that defendant was liable for the entire loss. But where, as in this case, the evidence indicates that by far the greater part of the loss occurred through the unexplained delays of the other carriers, it would be inconsistent with our rule to hold that the omission of the instruction to notify Wise converted defendant *ipso facto* into an insurer of delivery of the potatoes in good condition. We deem it more logical to hold the defendant responsible only for such portion of the delay and consequent loss, if any, as was dependent upon its own negligence.

The judgment is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.